ÁNGEL PARRILLA GARCÍA y CÁNDIDA RODRÍGUEZ ET AL., demandantes y recurridos, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES, demandada y recurrente; AUTORIDAD DE LAS FUENTES FLUVIALES, tercera demandante, recurrente y recurrida, *v.* LUIS A. RIVERA, h/n/c RIVERA CONSTRUCTION CO., INC. y ADJUNTAS DEVELOPMENT CORPORATION, terceros demandados, recurrentes y recurridos.

*Números:* R-63-235, R-63-239, R-63-243    *Resueltos:* 26 de marzo de 1965

*José Antonio Arabía* y *Carlos M. Díaz Lamoutte,* abogados de la Autoridad de las Fuentes Fluviales; *José M. Salicetti,* abogado de Adjuntas Development Corporation; *Carlos E. Colón,* abogado de los recurridos; *Rivera Zayas, Rivera Cestero & Rúa,* abogados de Luis A. Rivera, h/n/c Rivera Construction Company.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

La Autoridad de las Fuentes Fluviales fue demandada con motivo de dos accidentes ocurridos el 28 de septiembre de 1961. En uno, un empleado de la Autoridad de Comunicaciones de Puerto Rico sufrió lesiones cuando reparaba unas líneas telegráficas en la ciudad de Ponce. En otro, un empleado de la Puerto Rico Telephone Company murió electrocutado al subirse a un poste para reparar unas líneas telefónicas en el kilómetro 18 de la carretera que de Ponce conduce a Adjuntas. Las líneas de comunicación (la línea telegráfica y la línea telefónica) condujeron la energía eléctrica que causó los accidentes debido a que unas líneas de alta tensión de la Autoridad de las Fuentes Fluviales les vinieron en contacto con las primeras en las inmediaciones de la población de Adjuntas. En ese sitio las líneas eléctricas cruzaban las de comunicación.

A ambos lados de la carretera donde vinieron en contacto las líneas se trabajaba en la nivelación y compactación del terreno para la construcción de una urbanización. La urbanización en proyecto no había sido aún aprobada por los organismos competentes. Las líneas eléctricas cruzaban los terrenos en donde se estaba llevando a cabo el movimiento de tierra. Por esa razón se solicitó de la Autoridad de las Fuentes Fluviales la relocalización de sus líneas para que quedaran paralelas a las de comunicación. El 10 de julio de 1961 un supervisor de la Autoridad de las Fuentes Fluviales se personó al terreno donde se trabajaba y discutió con el encargado de los trabajos de nivelación la cuestión de la relocalización de las líneas. Quedó en someter un presupuesto pero no lo hizo. El 28 de septiembre siguiente ocurrieron los accidentes a que antes aludimos. La demanda radicada contra la Autoridad de las Fuentes Fluviales fue declarada con lugar al entender el tribunal sentenciador que "los accidentes se debieron a la culpa o negligencia de la demandada que teniendo conocimiento de la condición de extremo peligro creada por la proximidad de sus líneas de alto voltaje a las de la Autoridad de Comunicaciones de Puerto Rico y a las de la Puerto Rico Telephone Company sobre las cuales cruzaba nada hizo para corregir la condición peligrosa y así evitar los accidentes hasta después de ocurridos los mismos". La Autoridad de las Fuentes Fluviales radicó demanda de tercero contra Rivera Construction Company que era la firma que estaba llevando a cabo el movimiento de tierra y la Adjuntas Development Co. dueña de los terrenos.

Al resolver esta controversia el tribunal de instancia concluyó que la dueña del terreno no tenía responsabilidad pero que la firma encargada de la nivelación del terreno venía obligada a satisfacer a la Autoridad de las Fuentes Fluviales "una suma de dinero equivalente a un treinta (30%) por ciento de la suma total que ésta viene o venga obligada a satisfacer a las partes demandantes en estos casos

incluyendo la suma concedida para honorarios de abogado, costas e intereses legales a la fecha de su pago. . .". Fundó esta sentencia en su determinación al efecto de que "la conducta de los empleados de Luis A. Rivera haciendo negocios bajo el nombre de Rivera Construction Company fue negligente. Tenían conocimiento propio y fueron además informados por Faustino Torres del peligro existente de que las líneas de alto voltaje de Fuentes Fluviales hicieran contacto con las de la Puerto Rico Telephone Co. y las de la Autoridad de Comunicaciones de Puerto Rico y se cruzaron de brazos sin hacer gestión alguna para corregir la situación después de la conversación de Pietri y Antongiorgi. Esta negligencia contribuyó efectivamente a que ocurrieran los accidentes . . . . Esta negligencia es de un grado menor que la incurrida por la Autoridad de las Fuentes Fluviales y el tribunal estima que contribuyó en un 30% a la ocurrencia de los accidentes del 28 de septiembre de 1961."

Los dos casos (consolidados) contra la Autoridad de las Fuentes Fluviales y el de la demanda de tercero se vieron separadamente ante el tribunal de instancia a solicitud de la parte demandante. Se dictaron dos sentencias separadas. Contra estas dos sentencias se interpusieron tres recursos de revisión. Uno para revisar la sentencia dictada en el caso seguido contra la Autoridad de las Fuentes Fluviales. Para revisar la sentencia dictada en el caso de la demanda contra tercero ambas partes solicitaron auto de revisión. Se expidieron los tres autos solicitados y luego de expedidos acordamos consolidarlos. Dispondremos de ellos como si se trataran de un solo recurso.

La Autoridad sostiene que el único responsable es el tercero demandado y éste que es la Autoridad la única que debe responder. Ambos atacan el monto de la indemnización concedida.

El tribunal de instancia, hemos visto, responsabilizó a la Autoridad de las Fuentes Fluviales porque "teniendo cono-

cimiento de la condición de extremo peligro creada por la proximidad de sus líneas de alto voltaje a las de la Autoridad de Comunicaciones de Puerto Rico y las de Puerto Rico Telephone Co. sobre las cuales cruzaban nada hizo para corregir la condición hasta después de ocurridos los mismos." La responsabilidad del tercero demandado la fundó en el hecho de que "tenían conocimiento propio y fueron además informados por Faustino Torres del peligro existente de que las líneas de alto voltaje de Fuentes Fluviales hicieran contacto con las de la Puerto Rico Telephone Co. y las de la Autoridad de Comunicaciones de Puerto Rico y se cruzaron de brazos sin hacer gestión alguna para corregir la situación después de la conversación de Pietri y Antongiorgi."

Resulta evidentemente incorrecta la imposición de responsabilidad al tercero demandado por los fundamentos consignados en la sentencia recurrida. El hecho de que tuviera conocimiento del peligro que aparejaba el que las líneas conductoras de energía eléctrica vinieran en contacto con las líneas de comunicación, no le imponía a éste la responsabilidad de corregir la situación existente. Las líneas eléctricas no estaban bajo su control. Estaban bajo el control exclusivo de la Autoridad de las Fuentes Fluviales. Procede examinar la prueba para determinar sobre quién debe caer la responsabilidad de lo ocurrido, ya que el tribunal de instancia fundó su conclusión exclusivamente en el hecho de que tanto la demandada como el tercero demandado tenían conocimiento de una situación de peligro existente motivado por la proximidad de las líneas eléctricas a las de comunicación y nada hicieron para corregirla. Pero lo cierto es que el accidente no se debió a la condición de peligro existente por la proximidad de las líneas, sino al hecho patente de que el día del accidente las líneas eléctricas vinieron en contacto con las líneas telegráficas y telefónicas. ¿A qué se debió que vinieran en contacto? ¿Quién es responsable de ese hecho? Examinemos la prueba. El 10 de julio de 1961 el señor Anton-

giorgi, supervisor de la Autoridad de las Fuentes Fluviales se persona en los terrenos donde el tercero demandado está llevando a cabo el movimiento de tierra. Allí habla con el señor Pietri, supervisor de las obras. Pietri le muestra los dos postes que hay que relocalizar y le muestra la condición existente en relación con las líneas eléctricas y las de comunicación. Le dice de la proximidad de unas con otras y del peligro que eso representa en caso de que se rompiera una cruceta de las que sostenían las líneas eléctricas. Antongiorgi observa las condiciones existentes incluyendo la referente a uno de los postes que había que remover y que luego fue el que por haber cambiado de posición ocasionó el contacto generador de los accidentes que motivaron este pleito. El referido poste estaba enclavado en un montículo de tierra de cuatro a cinco metros de diámetro. En el centro de este montículo estaba el poste. Evidentemente en esa fecha no ofrecía peligro de que se desplazara.

¿Cómo cambió la situación del terreno donde estaba enclavado el poste luego de la conversación entre Antongiorgi y Pietri? Nada hay en la prueba que establezca que las líneas vinieron en contacto porque se rompiera una de las crucetas que sostenían las líneas eléctricas. Examinemos la declaración de Pietri. Se le pregunta si el terreno está "en la misma forma que usted lo dejó cuando visitó con Antongiorgi el lugar". A esta pregunta contestó "Bueno, tal vez no en la misma forma porque la erosión varía y la topografía del terreno". A la pregunta de si había observado el montecito donde estaba el poste el 29 de septiembre al otro día del accidente contesta que lo vio en detalle. Entonces le preguntan "¿Ese monte no había bajado y se había llevado con él el poste?" y contesta "Había variado algo". Al insistir en la pregunta contesta "El montecito es casi en roca y se notaba que había habido algún cambio". Entonces le pregunta si había cambiado y contesta "Sencillamente lo que había habido era un resbalamiento. Sí señor, resbaló hacia abajo. . ."

"un poco hacia un lado resbaló". Afirma lo que determinó el tribunal sentenciador, que dejó un montecito que tenía aproximadante cinco metros de diámetro. Entonces el abogado de la demandada le dice "Lo que yo señalo es que usted dejó cinco metros porque lo creyó seguro pero que más tarde el montecito se desplazó hacia abajo y hacia el lado." A eso comentó "Sí eso es lo correcto". Es conveniente aquí apuntar que el juez de instancia aparentemente le dio gran énfasis, prácticamente fundó su fallo en una fotografía del sitio donde estaba enclavado el poste tomada al otro día de los accidentes. En la citada fotografía el poste aparecía aparentemente en posición normal. Cuando se le pregunta a Pietri si en la fotografía aparecían los desplazamientos a que se refirió en su declaración afirma "No aquí no se nota" refiriéndose a la fotografía. Y antes había declarado que cuando estuvo en el sitio del accidente al otro día de ocurrir, había visto el poste inclinado. Así, evidentemente la fotografía no demuestra la situación existente al otro día del accidente.

La prueba presentada claramente demostró que las líneas eléctricas vinieron en contacto con las de comunicación debido a las obras llevadas a cabo por Rivera Construction. Fue el desplazamiento del poste debido a las obras realizadas sobre el terreno lo que ocasionó el contacto. Admitiendo que las líneas eléctricas y de comunicación estaban a poca distancia unas de las otras, el accidente no hubiera ocurrido de no haber intervenido el acto de Rivera Construction que hizo que el poste se desplazara.

Como expresamos en *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518 (1962) ". . . una fuerza nueva imprevisible rompe la cadena de causalidad". La Autoridad de las Fuentes Fluviales tenía derecho a esperar que la Rivera Construction no continuara trabajando alrededor del poste. El proyecto como antes apuntamos todavía no había sido aprobado por los organismos competentes. El acto voluntario de Rivera Construction se interpuso entre la conducta

negligente de la Autoridad y el daño sufrido por los demandantes.

Procede por lo expuesto revocar la sentencia dictada en el caso seguido contra la. Autoridad de las Fuentes Fluviales lo que trae como consecuencia la revocación de la sentencia dictada en el caso seguido por la Autoridad de las Fuentes Fluviales contra Rivera Construction Company. Se impone una explicación. La Regla 12.1 de las de Procedimiento Civil de 1958 establece que "el demandado podrá como demandante contra tercero notificar un emplazamiento y demanda a una persona que no sea parte en el pleito y que le sea o pueda serle responsable por toda o parte de la reclamación del demandante." La versión del año 1958 enmendó las disposiciones de regla correspondiente del año 1943. Aquélla disponía que "Antes de notificar su contestación, el demandado puede, mediante moción ex parte, o, después de notificada su contestación, mediante notificación al demandante, solicitar permiso como tercero demandante para notificar un emplazamiento y demanda a una persona que no sea una de las partes en la acción y la cual sea o pueda resultar responsable a él o *al demandante* por todo o parte de la reclamación de éste contra él." (Énfasis suplido.) La enmienda eliminó la disposición que permitía al demandado radicar demanda contra un tercero para responderle al demandante únicamente. De acuerdo con la versión vigente tiene que responderle al demandado aunque también puede responderle al demandante. 1A Barron and Holtzoff, Sec. 421 (ed. 1960). La regla sin embargo preservó el derecho del demandante a "deducir cualquier reclamación contra el tercero demandado que surja de la transacción o evento que motive su reclamación original en el pleito, y el tercero demandado deberá entonces presentar sus defensas como se dispone en la Regla 10 y sus reconvenciones y reclamaciones contra copartes según se dispone en la Regla 11."

En la regla no se dispuso la manera de deducir esa reclamación.

■ El propósito de la Regla 12.1, así como el de todas las de Procedimiento Civil tanto las del 1943 como las del 1958, es simplificar y aligerar los procedimientos para poder dispensar una justicia más rápida y menos costosa al alcance de todas las personas. Taxativamente la primera de las reglas dispone que las mismas "se interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento."

■ Nada hay en la Regla 12.1 que requiera una enmienda formal de las alegaciones por parte del demandante para que éste pueda deducir su reclamación contra el tercero demandado. Si por virtud de las alegaciones una contienda queda trabada entre el demandante y el tercero demandado y durante la vista del caso el demandante presenta prueba contra el tercero demandado y éste tiene oportunidad de contrainterrogar los testigos y presentar prueba en contrario, las alegaciones deben considerarse enmendadas a los efectos de establecer una reclamación directa del demandante contra el tercero demandado. La Regla 13.2 autoriza las enmiendas de las alegaciones para conformarlas a la prueba. La Regla 12.1 debe interpretarse a la luz de lo dispuesto en la 13.2. Como se expone por Feldman en un artículo titulado *A Puzzle under the Federal Impleader Rule*, 34 Tul. L. Rev. 77 (1959):

"Una doctrina que no requiera enmienda formal a las alegaciones [por parte del demandante] como único medio de presentar una reclamación contra un tercero demandado es una solución realista al problema. Los principios procesales no deben ser instrumentos débiles dominados por fórmulas que deben seguirse literalmente. Un sistema procesal oneroso tiende únicamente a combatir el verdadero propósito de un pleito."

Así se ha interpretado la regla correspondiente de las de Procedimiento Federal. *Falls Industries, Inc.* v. *Consoli-*

*dated Chem. Indus., Inc.*, 258 F.2d 277 (5th Cir. 1958);
*Patton* v. *Baltimore & O. R. Co.*, 197 F.2d 732 (3d Cir. 1952);
Barron and Holtzoff, Sec. 426, escolio 62, pág. 98 (Supl.
1964).

Así la interpretamos en *Viñas* v. *Pueblo Supermarket*,
86 D.P.R. 33 (1962). Al revocar la sentencia recurrida dic-
tamos otra a favor de la demandante contra el tercero
demandado a pesar de no haberse enmendado la demanda
para incluirlo como demandado ya que éste "contestó no sólo
la demanda contra tercero sino que formuló alegaciones con-
tra la demanda original, y... la demandante presentó prueba
inculpatoria contra ambos—las demandadas y el tercero
demandado—" pues "no hacerlo constituiría sublimar un
refinamiento procesal para impedir completa justicia."

■ Ahora bien, en el presente caso el demandante soli-
citó que la vista de los casos contra la Autoridad de las
Fuentes Fluviales se celebrara separadamente de la acción
incoada por la demandada contra el tercero demandado. La
corte accedió a ello.(¹) La razón de esa solicitud por parte de
los demandantes no tiene explicación. La demanda contra la
Autoridad de las Fuentes Fluviales fue radicada el 10 de
julio de 1962. La contestación de ésta el 26 de julio
siguiente.(²) El 31 de agosto se radicó la demanda de tercero
y el 8 y 10 de octubre se radicaron las contestaciones a esta
última. Así, estaban listas para señalamiento las dos acciones,
a los tres meses de la radicación de la demanda original.(³) El

---

(¹) La Regla 17.2 de las de Procedimiento dispone:

"El tribunal podrá dictar las órdenes que crea oportunas para evitar
dificultades, dilación o gastos a una parte debido a la inclusión de otra
contra quien nada reclama y quien nada reclama contra ella y podrá
ordenar juicios por separado o dictar cualquiera otra providencia para
evitar dilación o perjuicio y podrá dictar sentencia sobre una reclamación
de o contra una o más partes de acuerdo con lo dispuesto por la Regla 44.2."

(²) El juicio de la demanda original se señaló para el 20 de septiembre.
Para esa fecha ya se había radicado la demanda de tercero.

(³) Las fechas se refieren al caso de Cándida Rodríguez que es el
caso más importante de los dos radicados contra la Autoridad de las
Fuentes Fluviales.

juez dictó sentencia en los casos originales el 23 de agosto de 1963 y en el caso de la demanda de tercero el 12 de septiembre siguiente. Precisamente el propósito de la Regla 12.1 que autoriza las demandas contra tercero es litigar en un solo caso todo lo relacionado con el incidente que dio margen a la acción ejercitada, con el propósito de ganar tiempo y hacer menos costosos los litigios. Celebrar dos vistas, cuando la prueba pudo haberse presentado en una sola no tiene sentido y especialmente cuando de las alegaciones de la demanda contra tercero surgía, si podían sostenerse con la prueba, la posibilidad de que el tercero demandado fuera el único responsable. Y ya hemos visto que la propia prueba de la parte demandante así lo estableció. Al iniciarse la vista del caso contra el tercero demandado la Rivera Construction Co., solicitó una resolución al efecto de que la prueba presentada en el caso original contra la Autoridad de las Fuentes Fluviales no fuera considerada como prueba en contra de ésta. La corte así lo resolvió. Era lo procedente.

■ Por haberse celebrado las vistas de los casos separadamente el tercero demandado no tuvo la oportunidad de cuestionar la prueba que lo hacía responsable, presentada por el demandante. Así, si bien la prueba presentada en el primer caso establece la responsabilidad de Rivera Construction lo cierto es que ésta no fue parte en ese litigio, no teniendo por tanto la oportunidad de defenderse. Esto impide que podamos dictar sentencia contra la tercera demandada y a favor del demandante. La disposición que hemos hecho de estos casos no prejuzga en forma alguna la cuestión de si los demandantes pueden iniciar ahora una demanda contra Rivera Construction Co., y de ser ello procedente, tampoco prejuzga lo relativo a la responsabilidad de Rivera Construction Co. que deberá ventilarse en juicio plenario y determinarse considerando únicamente la evidencia que entonces se presente. Ver *De Sisto* v. *City of Linden,* 193 A.2d 870 (N.J. 1963) ; *Holmes* v. *Capital Transit Company,* 148 A.2d

788 (Munic. Ct. App. D.C. 1959); 3 Moore's *Federal Practice*, Sec. 14.16, pág. 611 (2da. ed. 1964); 1A Barron & Holtzoff, op. cit. Sec. 427, pág. 703.

*Se revocarán las sentencias que dictó el Tribunal Superior, Sala de Ponce en los casos CS 62-1365 y CS 62-1854 de fechas 23 de agosto de 1963 y 12 de septiembre de 1963.*