RAMÓN RODRÍGUEZ, ET AL., demandantes y recurridos, *v.* MIGUEL A. COLÓN COLÓN, demandado, demandante contra tercero y recurrido; ESTADO LIBRE ASOCIADO DE PUERTO RICO, tercero demandado y recurrente.

*Número:* R-70-358      *Resuelto:* 5 de marzo de 1975

*Gilberto Gierbolini, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados del tercero demandado y recurrente; *Luis R. Polo, José A. Rivera Mercado* y *Ulpiano Falcón Matos,* abogados del demandado, demandante contra tercero y recurrido.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

Ramón Rodríguez, por sí y a nombre de la sociedad legal de gananciales constituida por él y su esposa, y en representación de sus ocho hijos, inicialmente radicó demanda de daños

y perjuicios contra el Estado Libre Asociado de Puerto Rico y contra el aquí recurrido Miguel A. Colón Colón, alegando que este último, siendo policía estatal, causó la muerte de Generoso Rodríguez, hijo y hermano respectivo de los damandantes, mediante un disparo con su revólver de reglamento, y actuando en funciones de su empleo. La demanda contra el Estado fue incialmente desestimada mediante solicitud de sentencia sumaria, por el fundamento de que el policía recurrido no actuaba en su capacidad oficial ni dentro del marco de sus funciones, y que en ese entonces estaba sometido a tratamiento médico por el Fondo del Seguro del Estado como consecuencia de un accidente del trabajo. Dicha determinación no fue objeto de revisión ante nos.

Luego de resuelta a favor del Estado la referida moción de sentencia sumaria, el policía recurrido presentó, dentro del mismo pleito, una demanda de tercero contra el Estado Libre Asociado, cuya demanda es objeto de este recurso. En dicha demanda de tercero adujo el recurrido como fundamento de negligencia del Estado, que alrededor de cuatro meses antes de ocurrir el acto delictivo alegado en la demanda original un médico del Fondo que lo había atendido en relación con el accidente ocupacional mencionado, había hecho una anotación en el expediente médico al efecto de que el recurrido debía ser despojado de su revólver de reglamento por creer que en vista de su condición mental el recurrido constituía un riesgo tanto para él como para otras personas. Alegó además el recurrido en su demanda que dichas advertencias no fueron atendidas ni fueron trasmitidas a su patrono, la Policía de Puerto Rico. Esta información llegó a oídos del recurrido después de haber sido convicto por la muerte de Generoso. El recurrido se basó en la referida omisión del médico para imputar negligencia al Estado en la demanda de tercero instada contra éste, alegando que de ser él responsable a los demandantes originales por los daños causádosles por la muerte de Generoso, el Estado le respondería a su vez de las sumas que el

recurrido tuviere que satisfacer a aquéllos en concepto de daños y perjuicios.

Ventilado el caso en sus méritos, el tribunal sentenciador declaró con lugar la demanda original contra el policía recurrido y en su consecuencia le condenó a satisfacer a los demandantes por los daños y perjuicios sufridos por éstos varias sumas ascendentes en total a $29,000 más las costas y honorarios de abogado. Asimismo declaró con lugar la demanda de tercero contra el Estado condenándole a pagar al recurrido el total de la sentencia dictada contra él, disponiendo que el Estado satisfaría dicha suma directamente a los demandantes individualmente en la forma y cantidades indicadas.

El Estado, a través del Procurador General, ha solicitado la revisión con respecto a aquella parte de la sentencia que declaró con lugar la demanda de tercero contra el Estado, alegando la comisión de ocho errores por el tribunal de instancia.

## I

El primero, segundo y sexto señalamientos cuestionan la procedencia de la demanda de tercero contra el Estado, apoyándose en la teoría de que al exigir el recurrido que el tercero demandado le responda por *todo* lo que aquél deba satisfacerle a los demandantes originales, lo que en efecto está pidiendo es que el tercero le responda directamente a los demandantes. No le asiste la razón. Nos parece que la confusión surge de la interpretación que da el Estado a nuestra opinión en el caso de *Serralta* v. *Martínez Rivera,* 97 D.P.R. 466 (1969). En dicho caso sostuvimos que la demanda contra tercero es un recurso apropiado para que un demandado traiga al pleito a otro cocausante del daño a los efectos de distribuir la responsabilidad con arreglo a la norma establecida en *García* v. *Gobierno de la Capital,* 72 D.P.R. 138 (1951). En el caso de *Serralta* la teoría del demandado fue al efecto de que aun

teniendo él alguna culpa, el tercero demandado también era culpable. Siendo ello así sostuvimos que procedía la demanda contra tercero. Insinuamos entonces que si la demanda hubiese intentado exonerarse de toda culpa para responsabilizar total y directamente al tercero demandado con respecto al demandante, la demanda contra tercero no hubiese procedido.

En el caso de autos el demandado recurrido no pretende exonerarse de toda culpa para responsabilizar directamente al tercero frente a los demandantes. Su posición es que de ser él responsable a los demandantes, el tercero demandado le debe responder de la totalidad de los daños sufridos por él con motivo de la reclamación del demandante.

■ La situación de cocausantes de un daño es solamente una de las varias modalidades en las que es de aplicación la Regla 12.1 de las de Procedimiento Civil mediante la cual un demandado puede traer al pleito a un tercero. También puede utilizar un demandado esta medida procesal para reclamar del tercero la totalidad de los daños que el demandado haya causado al demandante por culpa o negligencia del tercero. Dicha regla, en lo pertinente, reza como sigue:

"En cualquier momento después de comenzado el pleito, el demandado podrá como demandante contra tercero notificar un emplazamiento y demanda a una persona que no sea parte en el pleito y que le sea o pueda serle responsable por *toda* o parte de la reclamación del demandante . . . ." (Énfasis suplido.) Regla 12.1 de las de Procedimiento Civil, 1958. 32 L.P.R.A. Ap. II, R. 12.1.

Es forzoso concluir que la demanda contra tercero es el recurso adecuado en el presente caso. *Chico* v. *Editorial Ponce Inc.*, 101 D.P.R. 759 (1973); *González* v. *E.L.A.*, 99 D.P.R. 397, (1970); *Díaz Bonilla* v. *Tribunal Superior*, 98 D.P.R. 49 (1969); *Parrilla García* v. *Fuentes Fluviales*, 92 D.P.R. 168 (1965).

## II

El tercer y quinto apuntamientos deben discutirse conjuntamente. El tercero señala el error del tribunal sentenciador al resolver que el Estado fue negligente. El quinto destaca que aun si hubiere negligencia del Estado, éste no puede responsabilizarse frente a los demandantes originales por no existir un nexo causal entre las actuaciones de aquél y el daño sufrido por éstos.

Veamos los hechos que estimó probados el tribunal sentenciador a los fines de determinar si la inacción del médico del Fondo del Seguro del Estado constituyó la conducta negligente que le puede hacer responsable por las actuaciones culposas del recurrido. Para enero de 1965 el demandado Colón, siendo policía estatal, tuvo un accidente del trabajo mientras conducía una motocicleta de la Policía. Como consecuencia sufrió varias lesiones, incluyendo una en el cráneo, por lo que comenzó a recibir tratamiento en el Fondo del Seguro del Estado. Se quejaba de dolores de cabeza, náusea y mareos y fue referido a un psiquiatra del Fondo, Dr. Luis Alvarez Pou, quien a juzgar por la confusión o pérdida de memoria que explicaba Colón y el cuadro que presentaba, fue de opinión que el recurrido estaba emocionalmente desajustado y que existía la posibilidad de que sufriera de un síndrome cerebral orgánico. El 9 de diciembre de 1965 el Dr. Alvarez insertó en el expediente médico del recurrido una nota al efecto de que era recomendable que los superiores de éste fuesen advertidos de su condición, y aconsejaba que se le quitase el revólver oficial tanto para su propia seguridad como para la de los demás. Esta advertencia, sin embargo, nunca fue trasmitida a los superiores del recurrido, ni el recurrido fue informado sobre ella.

Posteriormente, a principios de 1966, el recurrido se enteró de que otro policía, de nombre Wilson Rodríguez, participaba en una operación fraudulenta de desmantelación de automó-

viles en perjuicio de compañías financiadoras, lo que informó confidencialmente al Comandante de la Policía, y su superior, Alejandro Bigio. Luego de una investigación y como resultado de la misma, Wilson Rodríguez fue expulsado del cuerpo de la Policía. Tan pronto Wilson y sus hermanos se enteraron de que el recurrido había revelado los hechos aludidos, le amenazaron, poniendo éste en conocimiento de la amenaza recibida a sus superiores inmediatos, el Comandante Bigio y el Teniente Rodríguez.

Pasados unos meses, en 23 de abril de 1966, el ex-policía Wilson Rodríguez y su hermano Generoso coincidieron en una carretera de Orocovis con el recurrido en sus respectivos automóviles. Para esa fecha ya Wilson había sido expulsado de la Policía. El recurrido estaba todavía de vacaciones por enfermedad. Surgió una discusión entre el ex-policía Wilson y el recurrido mientras Generoso permanecía dentro de un automóvil a la orilla de la carretera. Wilson tenía en sus manos un roten. Súbitamente Generoso bajó del automóvil, le quitó el roten a Wilson y se dirigió al otro lado u orilla de la carretera. Fue entonces que el demandado sacó su revólver de reglamento y le disparó a Generoso en el cuello, falleciendo éste el próximo día como consecuencia del balazo recibido.

En 8 de julio siguiente el recurrido fue referido por el Fondo del Seguro del Estado al Dr. José R. Vigoreaux, psiquiatra, para examen y para que continuara el tratamiento comenzado por el Dr. Alvarez Pou. El Dr. Vigoreaux, tomando en consideración los estudios que había realizado el Dr. Alvarez Pou, así como un examen neurológico del Dr. Charles Payne y por sus propios hallazgos, diagnosticó un síndrome cerebral orgánico. Esta condición era progresiva desde que el recurrido sufrió el accidente de motocicleta en enero de 1965. El recurrido seguía, a la fecha de la vista de este caso, bajo tratamiento con el Dr. Vigoreaux pero no estaba ingresado en ningún hospital o institución para el tratamiento de enfermedades mentales. Declaró el Dr. Vigoreaux que a la luz del

informe del Dr. Alvarez Pou, fechado en 9 de diciembre de 1965, del historial y los síntomas presentes, hubiese hecho la misma recomendación que la del primer facultativo, esto es, que el recurrido debía ser desarmado para su propio bien y el de los demás.

▮ Debemos determinar si la referida inacción del Fondo constituye la causa legal de los daños ocasionados por el recurrido, por los que a su vez tendría el Estado que responderle al recurrido.

Es necesario preguntarnos si el daño se hubiese ocasionado de no haberse dado la inacción del Fondo. Esto es lo que se conoce doctrinalmente como el "sine qua non". *Workable Rules for Determining Proximate Cause*, 20 Calif. L. Rev. 229, 235; Prosser, *Law of Torts*, 3ra. ed., 1964, pág. 242; Harper & James, *The Law of Torts*, ed. 1956, vol. 2, sec. 20.2, pág. 1110; *Legal Cause in Actions of Torts*, 25 Harv. L. Rev. 103, 108 (1911). Véanse además: *Torres Trumbull* v. *Pesquera*, 97 D.P.R. 338 (1969); *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20 (1964). Es conveniente señalar que la condición mental que sufría el recurrido que fue advertida por el médico del Fondo se debía al accidente sufrido por éste. Es evidente que si como consecuencia de su condición el recurrido actuaba indebidamente causando daño a otras personas, o aún a sí mismo, el Estado no sería responsable. Las actuaciones anormales del recurrido, por ser en extremo subjetivas, eran prácticamente imposibles de precisar. En ese campo especulativo nos es difícil penetrar. No hay prueba específica en cuanto al estado mental del recurrido al momento de los hechos. Es significativo además que no hay indicio alguno en el expediente médico del recurrido al efecto de que éste presentara un problema serio e inminente de peligrosidad que justificara separarlo en alguna forma de circulación. Ni siquiera hay indicio en el expediente de que su familia fuere o debiere ser informada de cualquier tendencia homicida o suicida que presentase el recurrido. Meramente se señaló la conveniencia de

que debía ser desarmado por sus superiores. Esta medida de por sí no era indicativa de peligro inmediato. Ni siquiera el médico consideró importante dar los pasos efectivos para llevar a cabo su sugestión.

Hemos examinado el expediente del proceso criminal a que fue sometido el recurrido y no encontramos evidencia alguna que indicara sospecha de que estuviese actuando en forma anormal con antelación a los hechos ni aun durante el transcurso del tiempo entre la comisión del delito y la celebración del juicio. Es de notarse además que la declaración jurada de un testigo presencial de los hechos, la cual obra en autos, demuestra que el recurrido pudo tener motivos fundados para creer que podía ser atacado con el roten en el momento en que disparó su revólver; aunque tal declaración por sí sola no fuera suficiente para probar defensa propia.

Los hechos probados identifican con lógica certeza como causa generadora de daños y factor exasperante que culminó en el acto criminoso, la enemistad surgida entre Wilson y sus hermanos de una parte y el policía recurrido de la otra, y la amenaza de que fue objeto el recurrido de parte de aquéllos con la agravante final del encuentro y confrontación en carretera abierta en cuyo incidente, cargado de viejos rencores y fuertes pasiones, perdió la vida Generoso. Desgraciadamente estas páginas trágicas las escriben en ocasiones personas que no acusan desequilibrio mental.

Por tanto, entendemos que la posesión del revólver de reglamento por el recurrido, aun atribuyéndose a una omisión negligente del Fondo, no alteró las circunstancias que motivaron el acto intencional del recurrido. [1] Véanse: *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518 (1962);

---

[1] ". . . [la negligencia] ordinariamente no puede decirse que sea la causa próxima del daño cuando la negligencia de otra agencia humana independiente ha intervenido e infligido directamente el daño." 16 American & English Ency. of Law, 1st ed. pág. 446, según cita en *In Re Michigan S.S. Co.*, 133 Fed. 577 (1904), pág. 579. (Traducción nuestra.)

*Torres Trumbull* v. *Pesquera*, supra, pág. 347; *Vda. de Andino* v. *A.F.F.*, 93 D.P.R. 170, 180 (1966); *López* v. *Rexach*, 58 D.P.R. 143 (1941); *Pérez* v. *Santiago*, 56 D.P.R. 763 (1940); *Colón* v. *Shell Co. (P.R.) Ltd.*, 55 D.P.R. 592 (1939). No surge, a propósito de dicho acto intencional, la existencia de una clara relación de causa y efecto entre la aludida omision del Fondo y los daños ocasionados. Hemos reiterado el principio de que: "Un demandado no responde por su negligencia si no hay relación de causa y efecto entre la negligencia y el daño sufrido." *Torres Ocasio* v. *Autoridad sobre Hogares*, 93 D.P.R. 452 (1966), pág. 455, escolio 2. Véase además, *Orozco* v. *E.L.A.*, 80 D.P.R. 607 (1958); *López* v. *Rexach*, supra.

Nos es forzoso concluir que la intervención de una serie de eventos y circunstancias durante el período transcurrido entre la ya mencionada omisión del psiquiatra del Fondo y las actuaciones culposas del recurrido, hacen la primera suficientemente remota de las últimas como para que la responsabilidad del Estado quede excluida.

*Debe modificarse la sentencia recurrida para declarar sin lugar la demanda de tercero contra el Estado Libre Asociado. Así modificada se confirmará la misma.*

El Juez Asociado Señor Dávila concurre en el resultado.