Juan Santiago Vázquez et al., demandantes y recurrentes, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrido.

*Número:* RE-92-372      *Resuelto:* 15 de febrero de 1995

*Jorge Ortiz Brunet*, de *Ortiz Toro & Ortiz Brunet*, abogados de la parte recurrente; *Carlos Lugo Fiol, Procurador General Interino y Subprocurador General*, y *Laura G. Ydrach Vivoni*, Procuradora General Auxiliar, abogados de la parte recurrida.

## SENTENCIA

Evaluados los planteamientos de las partes, los autos originales y la transcripción de la evidencia, el Tribunal concluye que la caída del árbol —que causó la muerte a la niña Damaris Santiago Ríos— se debió a la negligencia del Estado al no tomar las medidas adecuadas de mantenimiento, que las circunstancias exigían, y oportunamente eliminarlo.[1]

*Se revoca la Sentencia del Tribunal Superior, Sala de Bayamón, de 16 de junio de 1992, se declara con lugar la demanda y remiten los autos originales para los trámites correspondientes.*

---

[1] Existía una condición visible de estrangulamiento que causó su necrosis y posterior caída y, además, estaba plantado en un lugar en que se habían puesto unos bancos donde los niños acostumbraban a sentarse durante horas de recreo. Por la naturaleza y las peculiaridades involucradas, el Estado tenía el deber de brindar tales medidas cautelares.

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió opinión concurrente, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Fuster Berlingeri. El Juez Asociado Señor Rebollo López emitió opinión disidente. La Juez Asociada Señora Naveira de Rodón se inhibió.

(*Fdo.*)Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Fuster Berlingeri.

I

El 24 de agosto de 1989, aproximadamente a la 1:30 P.M., los niños Damaris Santiago Ríos, Elvin Morales Hernández, Juan Padilla Colón y Lillian Molina estudiaban sentados en un banco de cemento ubicado bajo un árbol de goma (*ficus elástica*), en la Escuela Intermedia Julián Marrero, Bo. Palmarejo, en Corozal. Repentinamente, luego de oírse un estruendo que se originó en el árbol, su tronco y sus ramas cayeron. Damaris fue golpeada y quedó atrapada entre una de las ramas; su compañero Elvin trató de ayudarla pero la niña no reaccionó. Damaris fue llevada al hospital de Corozal y, posteriormente, trasladada al Hospital Regional de Corozal, donde falleció. Elvin se fracturó el codo derecho; Juan sufrió múltiples golpes en su brazo izquierdo y Lillian en su pierna derecha.

El 31 de octubre de 1989 Juan Santiago Vázquez, *et al.* demandaron al Estado Libre Asociado por negligencia al alegadamente no dar el debido mantenimiento al árbol. El

Estado negó tener responsabilidad. Oportunamente se celebró la vista en sus méritos. El Tribunal Superior, Sala de Bayamón (Hon. Zulma Zayas Puig, Juez), concluyó que el defecto del árbol caído "no fue notificado, no era visible y no surge como parte de la omisión o acto culposo de algún funcionario estatal en sus labores". Apéndice, *Exhibit 3*, pág. 16. Dictaminó no "imponer al Estado la onerosa tarea de inspeccionar todos los árboles existentes en las áreas públicas, si éstos no reflejan síntomas externos de enfermedad". Íd., págs. 16–17.

A solicitud de los demandantes Santiago Vázquez *et al.* revisamos.[1]

## II

Inicialmente la cuestión ante nos se reduce a analizar el valor de la prueba pericial y documental —para lo cual estamos en igual posición que el ilustrado foro de instancia— y, luego, pautar el derecho aplicable.

Al respecto, el perito de los demandantes recurrentes, John Sevier, sostuvo que la fotografía (*Exhibit* I-A) del árbol revelaba su enfermedad por el "enfajamiento o collar" que lo estranguló y provocó su caída.

Por el contrario, Roberto Vélez Orengo, perito del Estado, testificó que el árbol carecía de signos externos de enfermedad y que, de la fotografía aludida, resultaba muy

---

[1] Discuten:

"1. Erró el Tribunal al concluir que el árbol objeto de este pleito no evidenciaba sintomatología externa de enfermedad.

"2. Erró el Tribunal al concluir que para descubrir la enfermedad del árbol objeto de este pleito, hubiese sido necesario barrenar el mismo y corroborar la viruta para determinar que el mismo estaba necrotizado.

"3. Erró el Tribunal al concluir que mantenimiento preventivo no hubiese evitado la caída del árbol.

"4. Erró el Tribunal al no concluir que el deber de cuidado de la escuela es mayor que el de otras entidades.

"5. Erró el Tribunal al no concluir que la causa adecuada de la tragedia en este caso fue la omisión del ELA de no dar mantenimiento al árbol objeto de este litigio, permitiendo que el mismo se pudriese y cayese sobre niños inocentes." Solicitud de revisión, pág. 2.

difícil apreciar la existencia de dicho collar. Aclaró, sin embargo, que de haber tenido un collar, éste hubiera aprisionado al árbol y a sus células, y se hubiera mostrado enfermo. Sostuvo que como carecía de esos signos visibles de enfermedad no era menester recurrir al examen técnico, esto es, taladrar su tronco para extraer tejido interno (viruta) y saber si realmente lo estaba. *A juicio suyo, probablemente la caída se debió a la falta de oxígeno en el sistema de raíces ocasionado por el asfalto alrededor del árbol.*

El tribunal acogió la tesis pericial de Vélez Orengo. Determinó que de la fotografía no podía percibirse el referido collar. Concluyó que los daños causados se debieron a un *suceso fortuito, no predecible* por los funcionarios del Estado, ya que el árbol se veía saludable y no mostraba sintomatología de enfermedad.

## III

Tomamos nota de los pronunciamientos en *Ortiz Torres v. K & A Developers, Inc.*, 136 D.P.R. 192, 201 (1994), donde, en el contexto de unas inundaciones, dijimos que

> ... no podemos convertir al Estado en un garantizador absoluto del bienestar público, al extremo de tener que velar constantemente, como en este caso, por los actos de terceras personas que puedan provocar inundaciones. Requerirle al Estado [que mantenga] limpios en todo momento de escombros y basura —depositados por terceras personas en fincas aledañas— no sólo en la quebrada "Los Puercos" sino en todos los ríos y quebradas de Puerto Rico y terrenos colindantes resulta no sólo irrazonable, sino imposible. Las limitaciones económicas y humanas del Estado impiden semejante curso decisorio.

Igualmente entendemos que sería una carga muy onerosa para el Estado tener, de manera absoluta, que dar mantenimiento y velar por las condiciones de *todos* los árboles ubicados en predios públicos.

Ahora bien, adelantamos que existen ciertos tipos de

actividades, tales como las llevadas a cabo por las escuelas, que por su naturaleza esencial vienen "obligad[as] a ofrecer un grado de protección y seguridad independiente del que puedan proveer las agencias de seguridad pública". *Estremera v. Inmobiliaria Rac, Inc.*, 109 D.P.R. 852, 856 (1980). "Es el incumplimiento con este deber unido al hecho de que el daño sea previsible y su incumplimiento la causa adecuada, lo que responsabiliza a la institución. El grado de seguridad que viene obligada a ofrecer una institución educativa depende de la naturaleza de la institución, de su localización y de la manera en que funciona y ofrece sus servicios". *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 314 (1990).

Así aclarado, recordamos que para que la omisión negligente de funcionarios o empleados del Estado genere responsabilidad es imperativo el nexo causal entre el daño y el acto culposo o negligente. *Rodríguez v. Colón Colón*, 103 D.P.R. 493, 499–501 (1975); *Negrón v. Orozco Rivera*, 113 D.P.R. 712 (1983); *Hernández v. E.L.A.*, 116 D.P.R. 293 (1985).

> "La culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso." C. Rogel Vide, *La Responsabilidad Civil Extracontractual*, Ed. Civitas, 1976, pág. 90. La diligencia exigible es la que cabe esperar del ser humano medio, el buen *pater familias*. Si el daño es previsible por éste hay responsabilidad. Si no es previsible estamos generalmente en presencia de un caso fortuito. Rogel Vide, *op. cit.*, pág. 91. *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700, 704 (1982).

## IV

¿Incurrieron el Estado y sus funcionarios en conducta negligente al no percatarse de las condiciones y no cortar el árbol que causó la muerte de Damaris? El ilustrado foro de instancia indicó que en la fotografía no aparecía la existencia de un collar de estrangulación que provocara su caída. Así acogió la apreciación del perito del Estado. "Como Foro

apelativo no estamos obligados 'a seguir indefectiblemente la opinión, juicio, conclusión o determinación de un perito o facultativo ...'." Estamos en libertad para adoptar nuestro criterio propio. *Díaz García v. Aponte Aponte*, 125 D.P.R. 1, 13 (1989). Véase, además, *Ramos, Escobales v. García, González*, 134 D.P.R. 969 (1993).

Distinto al respetable criterio del Tribunal Superior, un examen detenido de *las* fotografías del árbol en evidencia revela el efecto de articulación o de enfajamiento descrito por el perito de los demandantes Santiago Vázquez *et al.* del modo siguiente:

> Usando la fotografía, Vuestro Honor, yo lo que le estoy diciendo es que a través de los años las raíces mismas iban formando como un tipo de articulación, *como una bola.* Y mientras se va formando esa articulación, esa bola, durante muchos años que toma formarse, forma una línea muy notable alrededor del árbol que parece una grieta que tiene una punta como b[is]elada. *Y esa grieta o el collar que se forma es muy obvia porque se forma sobre el nivel de la tierra.* Y yo quiero que conste claramente, que aunque es parte del sistema de raíces, el sistema de raíz en este tipo de árbol se forma sobre el nivel de la tierra *y es muy visible, obvio.* Y la grieta, el collar que se forma cuando existe este tipo de condición también *es visible.* (Énfasis suplido.) T.E., pág. 13.

No podemos, pues, coincidir con el Estado en cuanto a que, como el árbol se veía saludable, no era razonable hacer la prueba de taladrar su tronco para ver si estaba necrósico. El propio tribunal sentenciador reconoció que dicha condición de necrosis por falta de oxígeno "no se refleja en las ramas u hojas del árbol; éstas pueden estar aparentemente saludables, aún con la condición de necrotización del tronco". Apéndice, *Exhibit* 3, pág. 14.

En ningún momento el perito Vélez Orengo refutó que el accidente no hubiera ocurrido realmente debido a la existencia de un collar de enfajamiento;[2] antes bien con-

---

[2] Sin ser contradicho, el perito Sevier dijo que "esta condición se menciona en el [i]nforme de perito de la parte demandada donde yo leí una nota referente a que

signó que de las fotografías no podía arribar a esa conclusión. Asimismo sostuvo que la técnica para determinar si el árbol estaba necrósico no era costosa ni complicada:

> P.   O sea, ¿que a base de la foto usted no puede excluir, como no lo vio parado, a base de la foto usted no puede excluir que había, que se cayó debido a un collar que estaba alrededor del árbol?
> R.   Sí exacto. O sea, es...
> P.   Está bien, pues, vamos a seguir adelante. Las pruebas especiales que la compañera le preguntó a usted que habría que hacer, por ejemplo, usted nos dijo que era taladrar el tronco. ¿Esa es una de las pruebas especiales que se podía hacer?
> R.   Que se pueden hacer para determinar...
> P.   ¿Y eso es una prueba muy complicada?
> R.   No.
> P.   ¿Es una prueba muy costosa?
> R.   No.
> P.   Es cuestión de meter un taladro y sacar...
> R.   Sacar...
> P.   ...examinar...
> R.   Sacar madera y examinarle la, la...
> P.   ¿La viruta?
> R.   La viruta, la cachipa, el maderamen.
> P.   Muy bien, muchas gracias, no tengo más preguntas. T.E., págs. 122–123.

Ciertamente la prueba desfilada demostró que con el paso del tiempo el "ficus elástica" tiende a estrangularse. "Este era un árbol adulto, sembrado allí por el primer director de la escuela, *hacía más de 40 años.*"[3] (Énfasis suplido.) Apéndice, *Exhibit* 8, pág. 32.

---

esa especie de árbol tiende a esa condición, a estrangular". T.E., pág. 15

Al igual, la literatura de la *Estación Experimental Agrícola*, con la cual concurre Vélez Orengo (T.E., págs. 69–70) sobre el llamado palo de goma, dice:

"Se informa que las ramas grandes y pesadas se rompen fácilmente por el viento. En su estado natural las plantas por lo general empiezan como plantas aéreas (epifitas). Éstas se originan de semillas que germinan en otros árboles y luego producen raíces aéreas hacia la tierra hasta que se establecen bien y *estrangulan y matan el árbol que las ha sostenido.*" (Énfasis suplido.) E.L. Little, Jr., F.H. Wadsworth y J. Marrero, *Árboles comunes de Puerto Rico y las Islas Vírgenes*, Río Piedras, Ed. Universitaria, 1977, pág. 66.

[3] Carta de Roberto Vélez Orengo a la Lcda. Edna Evelyn Rodríguez, de la División de Litigios Generales del Departamento de Justicia.

Ello nos lleva a la interrogante siguiente: ¿la caída del árbol fue fortuita?

> Este concepto amplio, que por estar basado en la equidad puede operar en todo el campo de derecho, tiene como su aplicación más importante la de eximir de responsabilidad en el cumplimiento de las obligaciones. En este sentido puede definirse como aquel suceso no imputable al deudor que impide el cumplimiento de la obligación. Nuestro Código Civil, igual que el español, recoge dicho concepto —caso fortuito o fuerza mayor— al tratar de la naturaleza y efecto de las obligaciones. En ese contexto su Art. 1058 (31 L.P.R.A. sec. 3022) dispone que fuera de los casos mencionados en la ley o en la obligación, "nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables". *Rivera v. Caribbean Home Const. Corp.*, 100 D.P.R. 106, 110 (1971).

En las circunstancias expuestas, concluimos que la caída del árbol no era el tipo de suceso impredecible o que, previsto, fuera inevitable. La negligencia del Estado en no brindar un adecuado mantenimiento al susodicho árbol queda reflejada en que otros árboles fueron atendidos y podados en época cercana al accidente. No hizo lo mismo con el árbol de goma, el cual por las características del lugar en que se encontraba —esto es, escuela intermedia, con un banco de cemento que *invitaba* a los niños a efectuar actividades de recreo— requería mayor medida cautelar. Al así determinarlo, otra vez nos hacemos eco de la apreciación del perito Sevier:

> ...un árbol que está en una finca abierta dónde solo hay vacas puede que tenga un tronco agrietado, enfajado, y una copa pesada que no se haya podado y no hace diferencia. Sin embargo, este mismo árbol en un patio de una escuela con un banco debajo del árbol donde se reúnen niños todo el tiempo el sentido común me dicta y mi experiencia me dicta que ese árbol en ese

---

Además, aparece que el Sr. Justo Ríos Rosado, abuelo de Damaris, testificó que asistió a varias reuniones en la escuela donde estaban presentes padres, maestros y principal, y se acordó que el árbol era muy grande y representaba un peligro para los niños. Aunque su testimonio no fue contradicho, el tribunal concluyó que: "[n]unca se verificó en el Departamento de Recursos Naturales queja alguna del personal escolar, referente a algún problema relacionado con este árbol." Apéndice, *Exhibit* 3, pág. 4.

patio de la escuela con un banco debajo del árbol debería inspeccionarse y darle mantenimiento por si existe una condición como ésta de enfajamiento para que se detecte. Y que se tome en consideración el podar el árbol o reemplazar ese árbol si fuera necesario. T.E., pág. 17.

*Recapitulando*, el Estado es responsable por los daños producidos por la caída del árbol, pues existía una visible condición de enfajamiento que causó su necrosis. La evidencia demostró que con el paso de los años el "ficus elástica" tiende a dicho estrangulamiento —había sido sembrado hacía más de cuarenta (40) años— no empece a que el árbol pudiera lucir saludable. La prueba, consistente en barrenar para sacarle la viruta y averiguar la condición del tronco, no era complicada ni costosa. En las reuniones de padres y maestros se había discutido sobre el peligro que dicho árbol representaba para los niños; no se trata de un lugar público más, en que el libre transitar dependa exclusivamente de la voluntad de los ciudadanos, sino de una institución pública que responde a unos propósitos específicos, que habita en un espacio restringido y desempeña unas funciones escolares con un horario, también limitado, donde acude una comunidad que brinda servicios especializados y otra los recibe. Por su naturaleza y peculiaridades, el Estado tenía un deber de vigilancia mayor y obligación de brindar medios cautelares. No los descargó en este caso.

Por los fundamentos expuestos, concurrimos con la sentencia revocatoria.

— o —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Como surge de la opinión concurrente emitida por el Juez Asociado Señor Negrón García, *la cual le sirve de apoyo a la sentencia emitida por el Tribunal en el presente*

*caso*, el testimonio contradictorio de los dos (2) peritos que testificaron a nivel de instancia —uno presentado por la parte demandante y el otro por la parte demandada— sobre el hecho de si el árbol accidentado presentaba, o no, el "enfajamiento o collar" que alegadamente lo estranguló y causó que el mismo se cayera, *se basó en fotografías que se le tomaron al árbol en controversia luego de la ocurrencia del accidente.*

La mencionada opinión concurrente —no obstante reconocer y aceptar que, previo a la caída, el árbol en controversia se "veía saludable"— basa su errónea conclusión de que procede la revocación de la sentencia recurrida en la determinación que hace, *a nivel apelativo*, de que el referido árbol en efecto mostraba el "enfajamiento o collar"; determinación que hace basándose en "un examen detenido de las fotografías" que fueron admitidas en evidencia a nivel de instancia.

*No* estamos de acuerdo con ese proceder; ello por varias razones. En *primer* lugar —e independientemente de la trillada norma a los efectos de que, en relación con la apreciación de prueba pericial o documental, este Tribunal está en la misma posición que los tribunales de instancia—[1] *tenemos serias dudas sobre la "capacidad pericial" de los integrantes de este Tribunal para llegar a tal conclusión meramente a base de la observación de unas fotografías.*

En *segundo* lugar, la carga o responsabilidad que se le impone al Estado es una totalmente improcedente e irrazonable. Nada más y nada menos se está "resolviendo" en el presente caso que el Estado, so pena de imposición de responsabilidad civil, viene en la obligación de realizar "pruebas de taladraje" en relación con *todos y cada uno* de los árboles que existen en las escuelas públicas del País; ello *independientemente* de que dichos árboles luzcan enfermos o saludables.

---

[1] Véanse: *Fernández v. Hosp. San Carlos, Inc.*, 113 D.P.R. 761, 773 (1983); *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 D.P.R. 527 (1981).

En fin, y a pesar de que el accidente ocurrido es uno ciertamente lamentable y trágico, disentimos de la sentencia mayoritaria y de la opinión concurrente emitidas en el presente caso por razón de entender que la misma convierte al Estado en "garantizador absoluto del bienestar público" en esta clase de situaciones; *decisión que es contraria a la norma jurisprudencial vigente en nuestra jurisdicción.*([2])

---

([2]) Véase *Ortiz Torres v. K & A Developers, Inc.*, 136 D.P.R. 192 (1994).