JUAN PÉREZ LÓPEZ, demandante y apelante, *v.* LEOPOLDO SANTIAGO MARCANO, demandado y apelado.

Núm. 8024.—*Sometido:* Abril 11, 1940. *Resuelto:* Mayo 20, 1940.

*F. Prieto Azúar*, abogado del apelante; *Géigel & Silva*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

En la tarde del 10 de noviembre de 1937, un camión cargado de piedra que de Río Piedras se dirigía a Santurce, con motivo de cierta avería que tenía, fué estacionado a su derecha en una recta en la Carretera Central, en las proximidades de la residencia del Sr. Arcelay en Martín Peña.

Al obscurecer no fué dotado de las luces que exige la ley. El demandante fué encargado de custodiarlo y a ese efecto ocupó el asiento correspondiente al chófer. Como a las 10:30 de la noche, un automóvil Chevrolet, guiado por el demandado, chocó con la parte posterior del camión, como resultado de lo cual el demandante sufrió los daños personales que motivaron este pleito.

La corte inferior desestimó la demanda con costas al demandante, fundándose en que asumiendo que el demandado hubiera sido negligente al conducir su automóvil a una velocidad mayor que la permitida por la ley, el demandante también lo fué y contribuyó al accidente permitiendo que el camión permaneciese de noche en un camino público sin estar dotado de las luces necesarias para evitar peligro a las personas que transitaren por aquel sitio. Fundamentando su sentencia, dijo la corte sentenciadora:

"Si el accidente hubiera ocurrido a plena luz del día, no hay duda de que el demandante tendría un caso claro de negligencia por parte del demandado; pero por la noche, entre diez a diez y media de la noche, en un sitio obscuro, aun aceptando que la velocidad fuese en exceso de la que la ley establece, el hecho de que el autocamión que cuidaba el demandante estuviese parado a su derecha, pero sin luces, mata por completo el deber que tiene el demandado, de protección para el demandante, y mucho más cuando éste, que está encargado del cuido del autocamión, se mete dentro del mismo, no digamos que para esperar el accidente, pero sí con un sentido de menosprecio a su propia seguridad. La actuación de dejar sin luces el vehículo que cuidaba el demandante, constituye a nuestro juicio, aun aceptando la negligencia del demandado, una negligencia concurrente, si es que no lo fuera también la del propio demandante al permanecer dentro de este autocamión sin luces en un sitio obscuro y en un camino público, como lo es la carretera o Avenida Ponce de León, invitando el peligro. Poniendo la situación en la forma más favorable para el demandante, tenemos que concluir en que hubo negligencia mutua o concurrente lo que priva al demandante del derecho de recobrar los daños sufridos. Llegado a esta conclusión, se hace innecesario que discutamos en cuanto a las lesiones sufridas."

A nuestro juicio, el juez inferior no enfocó correctamente el problema jurídico ante su consideración. En acciones de daños y perjuicios por negligencia, el juzgador no debe limitar su investigación a determinar si hubo o no negligencia por parte del demandante. Debe ir más lejos aún y determinar si fué la negligencia del demandante o la del demandado la causa próxima del accidente. El demandante puede haber sido negligente, pero si su negligencia—si bien suministró la condición propicia para la realización del acto torticero—no fué sin embargo la causa próxima del accidente, la teoría de negligencia contribuyente es inaplicable y tiene derecho el demandante a ser resarcido de los perjuicios que por negligencia le hubiere causado el demandado. *Haszczyn* v. *Detroit Creamery Co.*, 275 N. W. 211, 212, y casos citados; *Colón* v. *Shell Co. (P. R) Ltd.*, 55 D.P.R. 592, 618.

La aplicación del principio que acabamos de enunciar requiere un estudio de la participación de una y otra parte en el accidente en cuestión.

La evidencia dejó establecido que la noche de autos el demandado viajaba en un automóvil Chevrolet, según su propia declaración, a una velocidad de 45 kilómetros por hora. La carretera por donde marchaba no estaba en las buenas condiciones en que hoy se encuentra; tenía a sus lados cunetas anchas y relativamente profundas, el ancho del camino por el sitio donde se hallaba el camión era de 22 pies; el pavimento estaba húmedo por haber lloviznado momentos antes del accidente, y el automóvil del demandado viajaba con la luz mediana (*dim*), no obstante marchar a la velocidad indicada. Declaró el demandado que antes de ver por primera vez el *truck* del demandante, se cruzó con otro camión que marchaba con dirección a Río Piedras, quedando momentáneamente deslumbrado por sus luces, no obstante lo cual, no redujo la velocidad, alcanzando a ver el camión del demandante, según su propia declaración, a pesar de ser la carretera recta, a una distancia de 50 ó 40 pies. Aunque se dió cuenta del obstáculo, no sólo no detuvo dentro

de esa distancia la marcha de su vehículo, si que tampoco lo desvió hacia la izquierda, lo que le hubiera sido muy fácil, ya que él mismo admitió que en aquellos momentos nada había en la carretera, a la izquierda del camión, que le impidiese desviar su automóvil. El camión, conforme resulta de la prueba, estaba pintado de rojo y se hallaba estacionado entre dos focos, los cuales distaban uno del otro alrededor de 100 pies. Francisco Iturrondo, testigo del demandante, declaró que el demandado venía a una velocidad "terrible", calculándola luego en 45 millas, declaración que el juez sentenciador pone en duda porque otro testigo del demandante, Martín Andrades, había declarado que en el sitio donde estaba estacionado el camión no había luces, lo que llevó al juez inferior a la siguiente conclusión:

"Pero considerando la declaración de Martín Andrades, propietario (era chófer) del autocamión, de que en el sitio donde estaba éste parado no había luces, ¿cómo fué posible que Iturrondo, que fué el testigo que habló de la velocidad del carro del demandado, pudiese apreciar dicha velocidad y calificarla como 'terrible'?

En verdad, no vemos la lógica de esta inferencia. El hecho de que el camión estuviese en un sitio obscuro no impide a una persona declarar sobre la velocidad que trae un automóvil que viaja con luces encendidas.

Que el demandado debió venir a una velocidad extraordinaria de acuerdo con las circunstancias, lo demuestra el resultado del impacto de los vehículos. Declaró el demandado que al recobrar la visión después de pasar el otro vehículo hacia Río Piedras, se dió cuenta del camión del demandante cuando se hallaba a una distancia de 50 ó 40 pies. Hemos de presumir que al advertir el obstáculo, el demandado, por instinto de conservación, empezase a reducir la velocidad, y no obstante hallarse sus frenos en buen estado—según él mismo declaró—el impacto del automóvil con el camión fué tan fuerte que el automóvil fué a parar al otro lado de la carretera hecho una "sinfonía" o un "acordeón",

palabras con que los testigos describieron gráficamente el mal estado en que había quedado el automóvil. El camión, a pesar de hallarse cargado de piedra y tener una goma vacía, fué arrastrado como veinte pies, abriéndose la portezuela y siendo lanzado el demandante desde el asiento del chófer a la cuneta, recibiendo las lesiones a que más adelante haremos referencia.

A nuestro juicio, no exageró el testigo Iturrondo al declarar que el automóvil del demandado venía a una velocidad "terrible".

■ El automóvil es una máquina peligrosa si el que lo maneja no tiene en todo momento el control del vehículo para detenerlo o desviarlo, evitando hacer daño. ■ Marchar de noche por una carretera de tanto movimiento a la velocidad a que venía el demandado, es un caso claro de negligencia, y no dudamos que esa negligencia constituyó la causa próxima del accidente, aun asumiendo que el demandado no pudiera haber visto el camión mucho antes aunque hubiera usado las luces que correspondían a la velocidad con que marchaba. De haber desplegado el demandado la diligencia que un hombre razonable hubiera usado dentro de las circunstancias, hubiese evitado el accidente, como sin duda lo evitaron los centenares de vehículos de motor de todas clases que desde el oscurecer de un día de noviembre, hasta las 10:30 de la noche, pasaron en una y otra dirección por el sitio donde se hallaba el camión.

En el caso de *Cothran* v. *Benjamin Cleenewerck & Son et al.,* 209 N. W. 132 (1926), el demandante guiaba un camión *Ford* cargado de muebles y efectos de la casa, a lo largo de la carretera de Ravine, cerca de Kalamazoo, y se detuvo a su extrema derecha del camino para examinar un neumático. Al tratar de poner en movimiento el vehículo, necesitó voltear el cigüeñal para arrancar el motor. Mientras realizaba esta operación, el automóvil del demandado chocó con la parte posterior del camión, empujándolo sobre el demandante, fracturándole las piernas y causándole serias lesiones. Se

imputó al demandado Blanchard que bajo las circunstancias guiaba su carro a una velocidad excesiva y que no lo mantuvo bajo su control. Alegaba el demandado que la causa del accidente fué el no haber encendido el demandante la luz posterior y no fijarse si venían otros automóviles, antes de ponerse a voltear el cigueñal. Según la declaración del demandado Blanchard, él vió el camión cuando se hallaba a una distancia de seis *rods* (99 pies); la carretera estaba cubierta de hielo y resbaladiza, razón por la cual no trató de aplicar los frenos o parar su carro, porque tenía la intención de desviar y pasar por la izquierda del camión, pero cuando trató de hacer esto último se enfrentó con otro carro que venía en dirección contraria. Estimando que no tenía espacio para pasar, bajo esas circunstancias, creyó mejor chocar con la esquina del *truck* que con el otro automóvil, agregando que si no hubiera sido por el otro automóvil no hubiera chocado con el camión. Al confirmar la sentencia dictada a favor del demandante, la Corte Suprema de Michigan se expresó así:

"En su alegato los abogados de los demandados arguyen que el demandante es culpable de negligencia contribuyente. No aparece que el demandante pudiera haber hecho algo para impedir que el demandado lanzase su carro sobre su camión. La falta de la luz trasera nada tuvo que ver con el accidente. El demandado Blanchard vió el *truck* desde que se hallaba a una distancia de seis *rods* (noventa y nueve pies), en tiempo suficiente para evitar la colisión. Su negligencia al dejar de actuar como lo hubiera hecho un hombre ordinariamente prudente dentro de las circustancias, fué la sola causa de los daños causados al demandante. No es necesario, por consiguiente, discutir con más amplitud la contención de negligencia contribuyente." (Op., pág. 133.)

En el caso de *Nason* v. *Hodne* (1919; B. C.), 4 D. L. R. 490 (Canada), el carro que el demandante guiaba se quedó sin gasolina, por lo que lo estacionó a su derecha en la carretera, fuera del pavimento, pero no encendió las luces del automóvil, a pesar de ser de noche. El demandado, que

guiaba otro automóvil en la misma dirección, chocó con la parte trasera del primero, causándole daños. Al resolver el caso, la corte sostuvo que aunque el carro del demandante no tenía las luces encendidas, el demandado no podía alegar con éxito la defensa de negligencia contribuyente, puesto que las luces delanteras del automóvil de éste estaban en buenas condiciones, lo que le hubiera permitido ver el carro del demandante en tiempo suficiente para detener el suyo si hubiera estado mirando hacia adelante.

■ En el caso de *Eldredge* v. *Sargent,* 96 P. (2d) 877 (1939), la Corte Suprema de Kansas, citando con aprobación el de Cothran, supra, dijo:

"Cuando la falta de luces o signos de aviso no impide al que maneja un automóvil ver un vehículo en tiempo de evitar una colisión, la ausencia de tales luces o signos no puede decirse que sea la causa próxima de la colisión. (Citas.)"

De una monografía en 104 A.L.R. 485, 517, tomamos la siguiente cita:

"La regla de que una persona que viaja por un camino público tiene derecho a asumir que las demás personas que usan el camino obedecen la ley y que no está abligada a ponerse en guardia contra otros que puedan violarla, se aplica solamente en aquellos casos en que el automóvil es conducido de acuerdo con las disposiciones de la ley y no en violación de la misma, y no es de aplicación cuando el automóvil es conducido de manera negligente, cuando no está debidamente equipado con luces, o cuando es conducido a una excesiva velocidad (condiciones concurrentes en el presente caso). En estos casos la negligencia primaria del conductor del automóvil impide la aplicación de la regla enunciada." *Cushing Ref. & Gasoline Co.* v. *Deshan,* 149 Okla. 225, 300 P. 312 (1931). (Paréntesis nuestro.)

No cabe duda que el demandado fué negligente al conducir su vehículo a la velocidad indicada, teniendo en cuenta las condiciones anteriormente indicadas.

■ El demandante fué también negligente al no dotar el camión de las luces que requiere la ley para tales casos. Pero si a pesar de esta negligencia del demandante, el demandado,

como él mismo declaró, vió el camión a una distancia de 40 ó 50 pies, suponiendo que no pudiera parar dentro de esa distancia, es innegable que pudo haber desviado su vehículo hacia la izquierda, que estaba expedita, de acuerdo con su propia declaración. Siendo ello así, es inevitable la conclusión de que la causa próxima del accidente fué la negligencia del demandado, no siendo de aplicación la doctrina de negligencia contribuyente.

■ Establecida la responsabilidad del demandado, pasemos ahora a determinar el montante de los daños.

El demandante era un hombre de 45 años de edad y ganaba $1.50 ó $2 diarios al tiempo del accidente. Sobre las lesiones por él recibidas, la única prueba que aparece de los autos es la declaración del Dr. M. García Estrada, de la cual tomamos lo siguiente:

"Que temprano en la mañana del día 11 de noviembre de 1937 examinó por primera vez al demandante Juan Pérez López en el Hospital Municipal de Río Piedras;...que de acuerdo con el examen practicado por el testigo, halló que el demandante tenía una contusión con hematoma en el esternón, en su parte central; erosión con hematoma y laceración de la piel de la rodilla derecha; contusión con hematoma y laceración en las regiones lumbosacrales derecha e izquierda; que el paciente vomitó copiosa sangre al hacerle el perito la primer curación; que dicha sangre no se debía a hemoptisis, sino a las lesiones internas recientes sufridas por el paciente. El testigo instala en la sala del tribunal un aparato eléctrico e ilustra a la corte sobre los pormenores de dos radiografías que dice fueron tomadas y desarrolladas en su presencia; refiere el doctor que el demandante, como consecuencia del golpe recibido por él, ha quedado sufriendo de una neurosis o 'spondylitis' traumática en las vértebras sacrales. . .

"Continúa declarando el doctor . . .: que la vértebra núm. 12 del demandante, luego del accidente, no se halla en su sitio y posición normales; que esto lo ha palpado también el perito con las manos; que ello aparece asimismo de las radiografías; que como consecuencia del accidente, el demandante ha perdido la elasticidad en su espina dorsal; que una vértebra se halla violentamente superpuesta a otra vértebra; que las vértebras de la región afectada se han desviado de su posición normal; que ello lo comprueba claramente

la última radiografía; que la última radiografía no demuestra mejoría por parte del paciente, sino antes al contrario un retroceso; que los discos vertebrales de esa porción de la espina están atrofiados, es decir, están 'fused', osificados; que como consecuencia del accidente, el demandante no puede ni podrá doblar el torso como antes del mismo; que la afección que sufre el demandante es seria y hace que pierda el equilibrio al andar, y por consiguiente tiene que usar bastón; que con la ayuda del microscopio halló el perito en el demandante una 'albuminuria traumática' por compresión sobre las regiones lumbares; que existe un desplazamiento de la cápsula núm. 1 y núm. 2 del demandante; que la incapacidad del demandante es permanente; que el demandante es hoy y será mañana, un hombre baldado, inútil para todo trabajo manual; que la afección que sufre el demandante como consecuencia del accidente le produce grandes dolores físicos y mentales; que el doctor ha comprobado que en ello y en el presente caso no hay simulación ni 'mallingering' por parte del demandante; que el demandante ha mostrado con frecuencia décimas de fiebre y ha perdido peso; que el demandante, después del accidente, nunca tuvo una temperatura normal..."

Habida consideración de las lesiones personales sufridas por el demandante, su edad y salario que ganaba, estimamos que la cantidad de $3,000, compensa razonablemente los daños por él sufridos.

*En su consecuencia, procede en este caso declarar con lugar el recurso, revocar la sentencia apelada y condenar al demandado a pagar al demandante la cantidad de $3,000, incluyendo en dicha suma los $200 de honorarios médicos que reclama, más las costas, sin incluir honorarios de abogado.*

EN MOCIÓN DE RECONSIDERACIÓN

Junio 18, 1940

El apelado solicita reconsideremos nuestra sentencia del 20 del mes pasado. Sostiene "que el ponente cometió dos errores en la apreciación de la prueba," a saber: (*a*) al asegurar que el camión del demandante apelante se hallaba estacionado entre dos focos de luz eléctrica distantes uno de otro cien pies, y (*b*) al sostener que no obstante haber visto el

apelado el camión del apelante a una distancia de 50 ó 40 pies, no desvió hacia la izquierda para evitar la colisión.

Admitimos que se cometió un *lapsus* al referirnos a "pies" en vez de a "metros"; lo que en todo momento tuvimos en mente fué una distancia de 100 metros, y fácilmente se comprenderá el error si se considera que una distancia de 100 pies equivale aproximadamente a 33 yardas y que ninguna carretera alumbrada tiene sus focos a una distancia tan pequeña. Pero de cualquier modo, no fué ésa una cuestión que en manera alguna influyó en nuestra decisión. Una mera lectura de nuestra opinión demuestra que toda ella descansa en el hecho incuestionable de haber visto el camión el demandado apelado, de acuerdo con su propia declaración, cuando se hallaba a una distancia de 50 a 40 pies, distancia que esta corte estimó suficiente para que el demandado pudiese desviar su automóvil hacia la izquierda, que se hallaba desocupada, y evitar así la colisión. Se observará que no entramos a considerar si la distancia de 50 ó 40 pies era suficiente para que el automóvil del demandado pudiese parar su marcha antes de llegar al sitio en que se hallaba el camión. Nos referimos exclusivamente a desviar la marcha de su vehículo, cosa que se hace fácilmente mediante un simple movimiento del guía.

Queriendo demostrar que nuestra aseveración al efecto de que el apelado no desvió su automóvil es errónea, cita el apelante los siguientes párrafos de la exposición del caso:

". . . . que la parte trasera de su carro chocó con la parte izquierda del *truck,* del lado derecho de su carro; que ese lado chocó con la parte izquierda del *truck,* trasera; que al carro del testigo se le fué la parte . . . la puerta del lado derecho se estropeó, se abolló, el guardalodos derecho también; que el choque no fué con la parrilla, con el bonete; que el bonete no sufrió porque como él quiso desviar, cuando vió el bulto negro quiso desviar a la izquierda. A pregunta del demandante respondió que ese bulto negro es el *truck,* que estaba parado sin luces." (Exposición del caso, págs. 17 y 18.)

" *                    

"... que el choque del *truck* es por la parte trasera, a la izquierda; por la izquierda y el carro es por la parte derecha, alante; que parte del choque fué por la parte de atrás del *truck* que no tenía luces, porque cuando él vió el *truck* encima, él quiso evitar el choque y trató de ir para la izquierda, pero siempre con la parte alante de su carro ..." (Exposición del caso, pág. 21).

La cita que de la página 17 de la exposición del caso hace el apelado y que hemos transcrito, está equivocada. Dicho párrafo no dice como lo expresa el apelado. Dice el apelado "que la parte trasera de su carro chocó con la parte izquierda del *truck*." En la exposición del caso dicho párrafo dice en la siguiente forma:

"... que cuando vió el bulto negro ése, que le pasó el *truck*, ahí vino el choque; *con la parte delantera* de su carro chocó con la parte izquierda del *truck*, del lado derecho de su carro; ..." (Bastardillas nuestras.)

Suponiendo que la exposición del caso dijese como equivocadamente asegura el apelado, lo que demostraría sería a lo sumo que el demandado fué negligente al tratar de desviar cuando ya estaba prácticamente sobre el camión del demandante. Indudablemente que si esa misma operación la hubiese hecho a 30, 20, o quizás a 15 pies de distancia del camión, él no hubiera chocado con ninguna parte del mismo. Pero, como hemos dicho anteriormente, la transcripción de evidencia no dice lo que expresa el apelado en su moción de reconsideración.

En el caso de *Winn* v. *Long*, 203 Cal. 758, el automóvil del demandante se hallaba detenido en la carretera, de tal forma que por su derecha podían pasar dos vehículos. A las 5:53 de la tarde se había puesto el sol aquel día, y el accidente ocurrió poco más de media hora después de la puesta del sol, a pesar de lo cual la luz posterior del vehículo del demandante no había sido encendida. El demandante estaba a la sazón manipulando el carburador. El demandado marchaba en la misma dirección, a una velocidad de 25 ó 30 millas por hora y vió por primera vez el automóvil del demandante cuando

se hallaba a una distancia de 30 a 50 pies. El carro del demandado chocó con la rueda y guardalodo traseros izquierdos del automóvil del demandante, de tal manera que empujó el automóvil hacia adelante, lesionando gravemente al demandante. El jurado llegó a la conclusión de que la distancia a que el demandado vió el automóvil del demandante era suficiente para haber evitado el accidente mediante el ejercicio de cuidado ordinario. La Corte Suprema, al confirmar la sentencia, no alteró el veredicto del jurado, diciendo que no había razón para sostener que no existiera una base razonable para la conclusión a que había llegado el jurado.

La cuantía de la indemnización en el caso de autos fué fijada por el tribunal luego de considerar la naturaleza de los daños sufridos por el demandante apelante, y no encontramos razón alguna que justifique alterarla.

Aunque en el recurso se levantan otras cuestiones, fué innecesario considerarlas, dada la conclusión a que se llegó en la opinión principal.

*Procede denegar la reconsideración solicitada.*