TEXTO COMPLETO DE LA SENTENCIA
I
Se trata de una demanda por daños y perjuicios originada en un accidente automovilístico ocurrido en la tarde del 12 de agosto de 1999 cerca del kilómetro 44.4 de la Autopista Luis A. Ferré en el término municipal de Cayey.
El accidente fue entre un vehículo marca Hyundai Excel de 1994 perteneciente a la apelada Lizbeth Danet Torres Ramos, quien estaba al volante del automóvil y quien resultó lesionada, y una guagua Ford Explorer de 1998, propiedad de la apelante Constructora W & F, Inc. {“Constructora”). La guagua era conducida por el apelante Ángel M. Muñoz Ayala, empleado de Constructora, quien se encontraba en gestiones de empleo. El accidente se produjo cuando el Sr. Muñoz chocó por detrás el vehículo de la apelada, el cual se había detenido en el carril izquierdo de la autopista debido a desperfectos mecánicos.
Para la fecha del accidente, Constructora tenia una póliza de seguro por responsabilidad pública a su favor emitida por la apelante .Integrand Assurance Company {“Integrand’).
Para la fecha de los hechos, la apelada trabajaba como oficinista y mensajera para un bufete de abogados en Ponce. Ese día, la apelada había ido a San Juan a presentar unos documentos legales. Al finalizar dicha gestión, tomó la Autopista Luis A. Ferré en dirección a Ponce para regresar a su trabajo. Eran cerca de las 3:00 p.m.
*931 El tramo donde ocurrió el accidente está ubicado en un área de pendiente en ascenso y curva, que queda antes del Monumento al Jíbaro en Cayey. En esa área, la autopista cuenta con dos carriles en cada dirección, los que están divididos por un área verde o isleta central. Al otro lado de la isleta, existe una valla de seguridad separada del carril derecho por un pequeño paseo. Por tratarse de una pendiente, el área de paseo entre el carril derecho y la valla de seguridad resulta ser muy estrecha, por lo que el espacio no permite estacionar un vehículo de motor.
Ese día, no estaba lloviendo ni existían circunstancias que afectaran la visibilidad de los conductores. El límite de velocidad en la autopista era de 55 millas por hora.
Al momento de los hechos, la apelada transitaba por el carril izquierdo de la autopista. De momento, se percató de que su vehículo comenzó a perder potencia hasta que se apagó. La apelada hizo gestiones para intentar encenderlo, pero no tuvo éxito. El vehículo perdió velocidad hasta que se detuvo en el mismo carril izquierdo. La apelada apretó el pedal del freno. La apelada no tuvo la oportunidad de salir de la carretera. Tampoco existía un área de paseo adecuada donde poder estacionar su automóvil.
La apelada encendió las luces intermitentes. Estaba sentada en su vehículo con el cinturón de seguridad puesto. La apelada intentó encender el motor para mover el vehículo de la carretera, pero éste no respondió. Debido a la velocidad a la que transitaban los vehículos en la autopista, y porque era un área de curva, la apelada no se atrevió a soltar el freno y dejar que el automóvil se deslizara en reversa hacia la isleta de grama ubicada a la izquierda del carril.
Según su testimonio, la apelada estuvo como un minuto tratando de encender su automóvil. La apelada declaró que mientras intentaba encender el motor, miró dos veces por el espejo retrovisor. Vio pasar de 6 a 8 vehículos.
En esos momentos, el apelante Ángel Muñoz conducía hacia Ponce por el mismo carril izquierdo donde estaba detenido el vehículo de la apelada. Para esa fecha, el apelante se desempeñaba como supervisor de proyectos de la Constructora. Constructora le había cedido la posesión y uso de la guagua Ford Explorer. El apelante la conducía en gestiones de su empleo. Se dirigía a Ponce.
Según el apelante, él conducía detrás de un camión que transitaba por el mismo carril y que no le permitía ver lo que quedaba al frente. Al acercarse al lugar donde estaba detenido el vehículo de la apelada, el camión se cambió súbitamente de carril. El apelante no tuvo tiempo para frenar. Intentó tirar su automóvil hacia la izquierda, a la isleta central, pero estaba muy cerca del vehículo de la apelada y lo impactó por detrás.
Según el testimonio de la apelada, ella vio el vehículo del apelante acercarse por el espejo retrovisor y cerró los ojos, en espera del impacto. Como consecuencia del choque, el vehículo del apelante quedó dentro de la isleta central, entre 25 y 30 metros más arriba del punto del impacto. El automóvil de la apelada fue arrojado contra la valla de seguridad que quedaba al extremo derecho de la carretera. No quedó debris en el punto del impacto.
Como consecuencia del choque, la apelada sufrió graves golpes y lesiones. La apelada golpeó su cabeza contra la cabina de su automóvil y perdió el conocimiento momentáneamente (“concusión cerebral”). Sufrió esguinces (“sprains”) en las áreas cervical y lumbar, traumas en el pecho que le produjeron inflamación de uno o más de los cartílagos de las costillas (“costocondritis”) y múltiples lesiones, abrasiones, contusiones, hematomas y cortaduras en distintas partes del cuerpo. El accidente provocó que el vehículo de la apelada quedara comprimido, con la apelada dentro.
La apelada fue llevada al Hospital Menonita de Cayey, donde recibió tratamiento de emergencia. No permaneció hospitalizada. Posteriormente, acudió al Fondo del Seguro del Estado, donde recibió tratamiento ambulatorio.
*932 Por motivo de sus padecimientos, la apelada renunció a su trabajo el 15 de diciembre de 2000. La apelada permaneció sin trabajar hasta septiembre de 2001, cuando ingresó en un programa de estudio y trabajo.
El accidente fue investigado por el agente Ramón L. Figueroa Ortiz, quien preparó el informe correspondiente. Según su versión, el agente Figueroa expresó que el día de los hechos entrevistó al apelante y éste le dijo que se había quedado dormido mientras conducía.
El agente Figueroa consideró que la apelada había actuado razonablemente al permanecer en su automóvil, ya que no era una zona segura para un peatón. El agente concluyó que el accidente había sido provocado, entre otras cosas, por la velocidad a la que conducía el apelante.
En agosto de 2000, la apelada y sus padres, los apelados Carmelo Torres e Ilia Lizette Ramos, instaron la presente demanda por daños y perjuicios contra el Sr. Muñoz, Constructora e Integrand en el Tribunal de Primera Instancia, Sala Superior de Ponce. Los apelados alegaron que el accidente había sido provocado por el apelante y solicitaron compensación por sus daños.
La parte apelante contestó la demanda y negó las alegaciones.
Luego de otros trámites, el Tribunal de Primera Instancia celebró la vista en su fondo. Ambas partes presentaron evidencia testifical y documental en apoyo de sus respectivas posiciones. Entre otros testigos, la parte apelada presentó el testimonio del Dr. José Raúl Ortiz Rubio, médico especialista en Medicina Ocupacional.
El 21 de junio de 2006, mediante la sentencia apelada, el Tribunal de Primera Instancia declaró con lugar la demanda.
En su sentencia, el Tribunal de Primera Instancia determinó que el accidente se había debido exclusivamente a la negligencia de la parte apelante. •
El Tribunal expresó:

El codemandado, Ángel Muñoz Ayala ... testificó que iba conduciendo muy cerca de un camión y que éste se cambió de carril y que entonces de repente sintió un impacto fortísimo. Muñoz Ayala declaró que todavía no sabe qué pasó, pero sí sabe que chocó con un objeto fijo. Muñoz Ayala no tomó ninguna medida para evadir el vehículo o evitar el accidente. Su testimonio confirmó sin lugar a dudas que iba conduciendo su vehículo de motor sin tomar las debidas precauciones, y muy de cerca de otro vehículo, lo que impidió que viera el de [la apelada] y que no tomó acción alguna para evitar el impacto, lo que indica que no estaba atento a la carretera. De hecho, el policía Ramón L. Figueroa Ortiz, ..., cuyo testimonio nos mereció entero crédito, testificó que el día de los hechos entrevistó a Muñoz Ayala y éste le admitió que se había quedado dormido mientras manejaba. Esta admisión es cónsona con la prueba desfilada en torno a cómo ocurrió el accidente y explica porqué Muñoz Ayala al día de hoy desconoce cómo fue que impactó el automóvil de [la apelada]. El accidente se debió única y exclusivamente a las acciones y omisiones negligentes del codemandado Muñoz Ayala. No existe evidencia en el récord que demuestre que [la apelada] incurrió en negligencia concurrente. ”

El Tribunal determinó que la apelada había sufrido daños severos como resultado del choque. Expresó:

“A consecuencia de los golpes, Torres Ramos sufrió de una contusión en la espalda, abrasiones, laceraciones, contusiones y un hematoma en el hombro derecho. También sufrió laceraciones en el brazo izquierdo, asi como abrasión, contusión, equimosis y edema en el codo izquierdo. Experimentó mareos y náuseas, presentó hinchazón en el lado derecho del rostro, desarrolló miositis (inflamación del tejido muscular) cervicodorsal y miositis toracolumbar, experimentó episodios de pérdida momentánea de visión, limitación de la 
*933
movilidad del cuello, limitación de la movilidad del tronco-cintura, parestesias (sensación de adormecimiento) en el brazo derecho y disminución de fuerza muscular. Además, presentó espasmos musculares en las regiones del cuello y los hombros, y en la porción dorsolumbar de la espalda y presentó crepitación de un cartílago costal. A Torres Ramos se le diagnosticó un trastorno generalizado de ansiedad con depresión leve, así como un trastorno de estado de ánimo mayor (“major mood disorder”). Torres Ramos también experimentó dolor a la palpación en la región occipital, dolores de cabeza recurrentes, dolor en el cuello, en ambos hombros y brazos (especialmente en el codo izquierdo), en el pecho y la espalda y experimentó irritabilidad, episodios de llanto, insomnio, cambios de apetito, cansancio extremo, escenas retrospectivas (“flashbacks”) sobre el accidente, ansiedad, pérdida de interés, restricción del afecto y depresión del estado de ánimo (“mood”).

De acuerdo con el Dr. Ortiz Rubio, médico cualificado como experto en medicina ocupacional, las lesiones sufridas por Torres Ramos han resultado en un impedimento permanente que equivale a una puntuación de evaluación de deficiencia de las funciones generales del cuerpo (“whole body impairment rating score”) en un 26%, según las guías de la American Medical Association. Fundado en dichas limitaciones y en el alto riesgo que supone la recurrencia de los síntomas, a Torres Ramos le han recomendado que limite sus actividades físicas a trabajos de tipo sedentario.
En cuanto al efecto del accidente en la vida actual de Torres Ramos debe decirse que frecuentemente siente dolor en la espalda media y alta, el cual coincide generalmente con unos espasmos musculares en esa región. Este dolor desaparece y reaparece y lo mismo sucede con los espasmos que lo acompañan. Puede que desaparezca por varios días (el término de remisión es variable) y, cuando reaparece, suele manifestarse por varios días consecutivos (también es variable el número de días en que el dolor se manifiesta consecutivamente). Usualmente este dolor no se manifiesta durante todo un día, sino que desaparece y reaparece a lo largo del día.
El dolor de espalda también interfiere con el uso de zapatos de tacón alto. Torres Ramos ha dejado de utilizar este tipo de calzado porque después de estar de pie por cierto tiempo le ocasionan un insoportable dolor. El caminar continuamente por cierto tiempo, le agrava el dolor de espalda.
El dolor de espalda media y alta y los espasmos también se le manifiestan al levantar o cargar cosas que de ordinario se tienen como de poco peso. Debido a los dolores de espalda y a la pérdida de fuerza muscular de sus extremidades superiores, la demandante ha tenido que dejar de hacer ciertos ejercicios y ha reducido la frecuencia con que los realiza. Esto le ha causado un notable aumento de peso. Antes de que sucediera el accidente que motiva su reclamación, Torres Ramos solía hacer ejercicios aeróbicos de alto impacto diariamente. El dolor de pecho se le exacerba cuando barre o pasa el estropajo (“mop”) y, en ocasiones, cuando se acuesta de lado.
El Tribunal declaró con lugar la demanda y condenó a los apelantes a pagar a la apelada $90,000.00 por concepto de los daños físicos y sufrimientos y angustias mentales sufridos por ella y $8,228.00 por concepto de su lucro cesante. El Tribunal concedió una compensación de $10,000.00 para cada uno de los padres de la apelada.
El Tribunal determinó que la parte apelante había actuado temerariamente al defenderse de la reclamación y condenó a dicha parte al pago de intereses desde la fecha de la presentación de la demanda y a una partida de $7,000.00 por concepto de honorarios de abogado, bajo las Reglas 44.1 y 44.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, Rs. 44.1 y 44.3.
Insatisfecha, la parte apelante acudió ante este Tribunal.
II
En su recurso, los apelantes plantean que el Tribunal de Primera Instancia erró al imponerles responsabilidad *934 por la ocurrencia del accidente, sin tomar en consideración el lugar y las circunstancias en las que éste ocurrió. Los apelantes alegan que el Tribunal incidió al no imponerle responsabilidad alguna a la parte apelada por el choque y al evaluar sus daños.
En nuestra jurisdicción, según se conoce, la responsabilidad civil resultante de actos u omisiones culposos o negligentes está regida por el Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, que establece que el que por acción u omisión cause daño a otro, mediante culpa o negligencia, viene obligado a reparar el. daño causado. El artículo añade que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. García v. E.L.A., 163 D.P.R. _ (2005), 2005 J.T.S. 18, a la pág. 731: Cintrón Adorno v. Gómez, 147 D.P.R. 576, 598 (1999).
El Artículo 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5142, por su parte, impone responsabilidad, entre otros, a los dueños de un establecimiento o empresa por los daños causados por sus empleados, con ocasión de sus funciones. 31 L.P.R.A. sec. 5142; Parrilla v. Ranger American of P.R., 133 D.P.R. 263, 271 (1993); Martir Santiago v. Pueblo Supermarket, 88 D.P.R. 229, 235-236 (1963).
Para que exista responsabilidad por daños y perjuicios, es necesario que concurran los siguientes elementos: (1) un daño; (2) una acción u omisión negligente; y (3) la relación causal entre el daño y la conducta culposa o negligente. Rivera v. S.L.G. Díaz, 165 D.P.R. _ (2005), 2005 J.T.S. 121, a la pág. 57; Pons v. Engebretson, 160 D.P.R. - (2003), 2003 J.T.S. 151, a la pág. 227; Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998); Toro Aponte v. E.L.A., 142 D.P.R. 464, 473 (1997); Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 308 (1990).
La culpa o negligencia consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación, correspondiendo tal diligencia a las circunstancias de las personas, del tiempo y del lugar. La diligencia exigible en estos casos es la que correspondería ejercitar a un buen padre de familia o un hombre prudente y razonable. Pons v. Engebretson, 2003 J.T.S. 151, a la pág. 227; Toro Aponte v. E.L.A., 142 D.P.R. a la pág. 473; Elba A.B.M. v. U.P.R., 125 D.P.R. a la pág. 309.
El deber de cuidado impone tanto la obligación de anticipar, como la de evitar, la ocurrencia de daños cuya probabilidad es razonablemente previsible, y no se limita a anticipar solamente el riesgo preciso o las consecuencias exactas de determinada conducta. Santiago v. Sup. Grande, 166 D.P.R. _ (2006), 2006 J.T.S. 21, a la pág. 840; Ginés Meléndez v. Autoridad de Acueductos, 86 D.P.R. 518, 524-525 (1962).
No se responde, sin embargo, por acontecimientos que no son razonablemente previsibles, es decir, por sucesos fortuitos. Toro Aponte v. E.L.A., 142 D.P.R. a la pág. 473; Montalvo v. Cruz, 144 D.P.R. a la pág. 756.
Para determinar si una omisión es generadora de responsabilidad, se considera: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño; y (2) si de haberse llevado a cabo el acto omitido, el daño se hubiera evitado. Santiago v. Sup. Grande, 2006 J.T.S. 21, a la pág. 840; Toro Aponte v. E.L.A., 142 D.P.R. a la pág. 474; Tormos Arroyo v. D.I.P., 140 D.P.R. 265, 271 (1996).
En nuestro ordenamiento rige la teoría de causalidad adecuada para determinar la responsabilidad por los daños bajo el citado Artículo 1802. Según dicha doctrina, no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general. Santiago v. Sup. Grande, 2006 J.T.S. 21, a la pág. 845; Rivera v. S.L.G. Díaz, 2005 J.T.S. 121, a la pág. 57; Montalvo v. Cruz, 144 D.P.R. a la pág. 756; Soc. de Gananciales v. Jeronimo Corp., 103 D.P.R. 127, 134 (1974).
El peso de la prueba para establecer la responsabilidad del demandádo corresponde a la parte demandante. En materia de responsabilidad civil, el hecho productor del daño nunca se presume. El Tribunal Supremo de Puerto Rico ha aclarado que la mera ocurrencia de un daño, sin más, no puede constituir prueba concluyente de conducta *935 antijurídica de la parte demandada. Quien alega que sufrió un daño por la negligencia de otro, tiene la obligación de poner al Tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia. Colón y otros v. K-mart y otros, 154 D.P.R. 510, 521 (2001); Matos v. Adm. Servs. Médicos de P.R., 118 D.P.R. 567, 569 (1987); Cotto v. C.M. Ins. Co., 116 D.P.R. 644, 651 (1985); Vaquería Garrochales, Inc. v. A.P.P.R., 106 D.P.R. 799, 801 (1978).
En la situación de autos, según hemos visto, el Tribunal de Primera Instancia concluyó que el accidente fue provocado por la parte apelante, quien conducía su vehículo sin tomar las debidas precausiones. No estamos en posición de intervenir con la determinación del Tribunal de Primera Instancia.
La norma, según se conoce, es que las determinaciones realizadas por el foro de instancia no serán modificadas por el tribunal apelativo en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Argüello v. Argüello, 155 D.P.R. 62, 78-79 (2001); Colón y otros v. K-Mart y otros, 154 D.P.R. a la pág. 520; Orta v. Padilla, 137 D.P.R. 927, 937 (1995); Rodríguez Oyóla v. Machado Díaz, 136 D.P.R. 250, 258 (1994); véase, además, la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2.
Debe recordarse que el Tribunal de Primera Instancia tiene la oportunidad de escuchar a los testigos que declaran ante sí, por lo que se encuentra en mejor posición que este Tribunal para evaluar la credibilidad de éstos y formular determinaciones sobre los hechos de un caso. Argüello v. Argüello, 155 D.P.R. a la pág. 79; Trinidad v. Chade, 153 D.P.R. 280, 291 (2001); Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49-50 (1998).
En la presente situación, entendemos que la decisión del Tribunal está razonablemente sostenida por la prueba.
La regla básica en torno a la velocidad a la que debe conducirse un vehículo de motor en nuestra jurisdicción está dada por el Art. 5.01 de la Ley de Vehículos y Tránsito. Dicho precepto dispone, en lo pertinente:

“La velocidad de un ... vehículo de motor deberá regularse en todo momento con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones de la vía pública. Nadie deberá guiar a una velocidad mayor a la que [IJe permita ejercer el debido dominio del vehículo y deberá reducir la velocidad o parar, cuando sea necesario para evitar un accidente. De conformidad con los requisitos expresados anteriormente, toda persona deberá conducir a una velocidad segura y adecuada ...al acercarse a la cima de una pendiente, al viajar por una carretera ... sinuosa, cuando existan peligros especiales con respecto a ... otro tránsito, o por razón del tiempo o las condiciones de la vía pública. ”

9 L.P.R.A. sec. 5121 (Supl. 2006); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 713 (1990); Vda. de Vila v. Guerra Mondragón, 107 D.P.R. 418, 424 (1978).
Por otro lado, en cuanto a la distancia que debe guardar un conductor respecto al vehículo que le precede, la norma es que debe guardarse una distancia prudente. En aquellos casos en que el límite de velocidad autorizada sea mayor de 25 millas por hora, el conductor deberá dejar “espacio suficiente para que cualquier vehículo que lo rebase pueda colocársele al frente con seguridad”. 9 L.P.R.A. see. 5290.
Debe recordarse que un automóvil puede resultar una máquina peligrosa para otros si el que lo maneja no tiene “en todo momento el control del vehículo para detenerlo o desviarlo, evitando hacer daño”. Pérez v. Santiago, 56 D.P.R. 763, 768 (1940).
El Tribunal Supremo de Puerto Rico también ha aclarado que ”[e]l hecho de dar cumplimiento a todas las disposiciones de ley aplicables como lo son la velocidad, obedecer las señales, etc., no exime al conductor de ejercer un grado de cuidado que le permita anticipar razonablemente la probabilidad de un accidente ”. Molina, *936 Caro v. Dávila, 121 D.P.R. 362, 372 (1988); Alvarez v. Hernández, 74 D.P.R. 493, 503 (1953).
Según ha expresado el Tribunal Supremo de Puerto Rico:

“Conducir un vehículo de motor implica ciertos riesgos. Potencialmente están relacionados con las condiciones -permanentes o temporales- de las carreteras. Muchos son palpables a la simple vista del conductor, tales como curvas, poco ancho, ... Además, un riesgo normal inherente es el asociado con el tránsito de otros conductores y vehículos de motor. ”

Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. a la pág. 713.
En el presente caso, la prueba reflejó que el apelante conducía su vehículo a una velocidad sustancial sin guardar la debida distancia del camión que lo precedía, lo que provocó que no viera a tiempo que el vehículo de la apelada se encontraba detenido en la carretera. Cuando el apelante finalmente se percató de la presencia del vehículo de la apelada, no pudo detener su automóvil, por lo que provocó el accidente.
El área donde ocurrió el impacto era una pendiente donde había una curva y no existía espacio para maniobrar al lado derecho de la carretera, por lo que el apelante venía obligado a ajustar su velocidad para poder enfrentar cualquier emergencia.
En estas circunstancias, entendemos que el Tribunal de Primera Instancia no erró al concluir que la parte apelante fue la responsable del accidente. Véase, Brazee v. Wise, 83 D.P.R. 179, 183 (1961) (“[e]s deber de todo conductor tener el vehículo que conduce bajo constante control en todo momento, de suerte que pueda detener con tiempo su marcha si de pronto surge una situación de emergencia”).
La parte apelante alega que la apelada incurrió en negligencia comparada al permanecer en su automóvil, en lugar de bajarse del vehículo y situarse a distancia de la carretera, para evitar ser lesionada.
Lo cierto es que la prueba reflejó que el accidente ocurrió pocos instantes después que el vehículo de la apelada comenzara a fallar, por lo que ésta no tuvo la oportunidad de tomar medidas para evitar sus daños. En el área del accidente existía una curva. La apelada declaró que ella estaba tratando de encender su vehículo, lo que no era un comportamiento irrazonable. La apelada mantenía puesto su cinturón de seguridad. Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757, 771 (1978). Según la apelada, ella miraba por su espejo retrovisor. Relató que ella sólo vio pasar entre 6 a 8 carros antes del impacto, lo que refleja que no tuvo tiempo suficiente para tomar otras medidas. 
Durante el juicio, el agente Figueroa declaró que las circunstancias de la carretera hacían peligroso que la apelada abandonara el vehículo y que el área de la isleta central no era segura para un peatón ni para estacionarse. Según dicho agente, dar reversa hubiera provocado un accidente.
No podemos juzgar, en estas circunstancias, que el Tribunal hubiese errado en su apreciación.
La parte apelante plantea que el Tribunal de Primera Instancia erró en su evaluación de los daños.
En este tipo de casos, la parte demandante viene obligada a probar los daños sufridos.
La compensación a ser concedida en estas situaciones incluye el resarcimiento de los daños patrimoniales, que pueden estar compuestos por el daño emergente y el lucro cesante, así como los daños morales, consistentes de los sufrimientos físicos, las angustias mentales, la pérdida de compañía, el afecto y la incapacidad. Cintrón Adorno v. Gómez, 147 D.P.R. a la pág. 587; Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497, 520 *937 (1994); véase, además, Herminio Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Vol I, 2da edición, Publicaciones J.T.S., 1986, a las págs. 427-428.
La cuantificación necesaria y justa para compensar los daños está confiada a la experiencia y discreción del Tribunal de Primera Instancia. S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614, 623 (2002); Nieves Cruz v. U.P.R., 151 D.P.R. 150, 170 (2000); Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. 695, 700 (1999).
El derecho a ser compensado no puede ser derrotado meramente porque en ocasiones el cómputo en cuestión pueda resultar un tanto especulativo. Lo importante es que la compensación concedida esté basada en la prueba y que se mantenga el sentido remediador que persigue el ordenamiento. Rivera v. S.L.G. Díaz, 2005 J.T.S. 121, a la pág. 61; Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. a la pág. 700.
No se exige un grado de prueba tal que, excluyendo la posibilidad de error, produzca una certeza absoluta. Colón y otros v. K-Mart y otros, 154 D.P.R. a las págs. 521-522; Vda. de Delgado v. Boston Ins. Co., 99 D.P.R. 714, 722 (1971); Rodríguez v. Ponce Cement Corp., 98 D.P.R. 201, 207 (1969).
Las determinaciones del Tribunal de Primera Instancia relacionadas a la valoración de los daños merecen gran deferencia. S.L.G. Rodríguez v. Nationwide Insurance Co., 156 D.P.R. a la pág. 630; Nieves Cruz v. U.P.R., 151 D.P.R. a la pág. 170; Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. a la pág. 700; Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 339 (1998); Toro Aponte v. E.L.A., 142 D.P.R. a la pág. 478; Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 178 (1996).
Las sumas concedidas no serán revocadas a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. S.L.G. Rodríguez v. Nationwide Insurance Co., 156 D.P.R. a la pág. 630; Nieves Cruz v. U.P.R., 151 D.P.R. a la pág. 170; Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. a la pág. 700; Blás v. Hosp. Guadalupe, 146 D.P.R. a la pág. 339; Toro Aponte v. E.L.A., 142 D.P.R. a la pág. 478; Quiñones López v. Manzano Pozas, 141 D.P.R. a la pág. 178.
En todo caso, la parte que solicita la modificación de las sumas concedidas a nivel de primera instancia, viene obligada a demostrar la existencia de circunstancias que lo justifiquen. Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. a la pág. 700; Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 452 (1985); Vda. de Silva v. Auxilio Mutuo, 100 D.P.R. 30, 34 (1971).
En la situación de autos, hemos examinado el récord y no estamos en posición de sustituir la evaluación realizada por el Tribunal de Primera Instancia. Dicho foro, según hemos visto, determinó que la apelada había sufrido numerosas contusiones, laceraciones, abrasiones y cortaduras como consecuencia del accidente. El Tribunal entendió que la apelada había sufrido una miositis cervicodorsal y toracolumbar, que había experimentado limitaciones en la movilidad de su cuello y de la cintura. La apelada sufrió dolores fuertes en numerosas partes del cuerpo, así como cambios emocionales significativos provocados por el accidente.
El Tribunal entendió que la apelada había sufrido una pérdida de 26% de sus funciones generales y que padecería de dolores futuros en la espalda, los que le afectarían su vida.
La parte apelante cuestiona dichas determinaciones. Se queja de que el Tribunal concediera crédito al testimonio del Dr. Ortiz Rubio, perito en Medicina Ocupacional. Según la parte apelante, el testimonio de dicho perito “tenía que ser desde el punto de vista de medicina ocupacional y no como impedimento o limitaciones físicas ”.
Nuestro ordenamiento adopta un criterio liberal para determinar si una persona está calificada para declarar como perito en un caso. Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R., 150 D.P.R. 658, 663 (2000); Ernesto L. *938 Chiesa, Tratado de Derecho Probatorio, Tomo I, Publicaciones J.T.S., 1998, a la pág. 562.
La Regla 53 de las de Evidencia establece, en este sentido, que toda persona está cualificada para declarar como perito “si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio”. 32 L.P.R.A. Ap. IV, R, 53; véanse, Pueblo v. Calderón Álvarez, 140 D.P.R. 627, 633 (1996); San Lorenzo Trad., Inc. v. Hernández, 114 D.P.R. 704, 710 (1983); National Car Rental v. Caribe Motors, 104 D.P.R., 74, 76 (1975).
No se requiere preparación formal ni una licencia. Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R., 150 D.P.R. a la pág. 663; Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299, 334 (1991); Pueblo v. Rodríguez Otero, 90 D.P.R. 861, 862 (1964). Tampoco se exige que el perito cuente necesariamente con una especialidad en el área en cuestión, Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R., 150 D.P.R. a las págs. 664-665, si bien la existencia de ésta puede ser tomada en consideración al adjudicar el valor probatorio que pueda merecer el testimonio. Dye-Tex P. R., Inc. v. Royal Ins. Co., P.R., 150 D.P.R. a la pág. 665; véanse, además, Ríos Ruiz v. Mark, 119 D.P.R. 816, 825-826 (1987); Vda. De Torres v. Womble, 99 D.P.R. 859, 876 (1971); Pueblo v. López, 76 D.P.R. 378, 384-385 (1954).
En el presente caso, pensamos que las determinaciones del Tribunal de Primera Instancia están sostenidas por el testimonio de la apelada, quien declaró sobre los daños sufridos por ella, así como por el testimonio del Dr. Ortiz Rubio. El Tribunal no venía obligado a descartar el testimonio de dicho perito, porque su especialidad fuese más bien en aspectos ocupacionales.
La parte apelante alega que no existe evidencia objetiva de que la apelada hubiera sufrido, como tal, incapacidad alguna como resultado del accidente. Se queja de que la evaluación del Dr. Ortiz Rubio estuvo basada en consideraciones subjetivas de dolor, según relatado por la apelada, y que ésta no sufrió fracturas u otras lesiones de tipo ostensible, que justificaran la compensación recibida. El Tribunal de Primera Instancia, sin embargo, concedió pleno crédito a- la versión ofrecida por la apelada sobre sus daños, así como á la evaluación presentada por el Dr. Ortiz Rubio, quien opinó que la condición de la apelada implicaba una incapacidad en el porciento indicado.
Contrario a la parte apelante, no percibimos que el Tribunal abusara de su discreción al conceder las partidas mencionadas. No habremos de sustituir el criterio de la Sala recurrida.
Por los fundamentos expresados, se confirma la sentencia apelada.
Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIO 2007 DTA 36
1. En su recurso, la parte apelante expone que la apelada “tomó su teléfono celular y procedió a hablar por teléfono dentro del vehículo estando parado en la autopista ocupando el carril interior”. (Recurso de Apelación, pág. 2). Se pretende sugerir que la apelada tuvo tiempo de evaluar el peligro en que se encontraba y que eligió permanecer dentro del automóvil.
No hemos hallado en la transcripción de la prueba base alguna para la aseveración de la parte apelante. Al contrario, la apelada declaró durante el contrainterrogatorio que en ningún momento utilizó su celular (Transcripción del 9 de noviembre de 2004 a la pág. 92). Por su parte, el agente Figueroa declaró no recordar que la apelada le hubiera dicho que estaba hablando por el celular (Transcripción del 25 de junio de 2004 a la pág. 52).
*939 El Canon 35 del Código de Ética Profesional exige a todo abogado comportarse con sinceridad y honradez hacia el tribunal. Dicho precepto aclara que “[n]o es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho”. 4 L.P.R.A. Ap. IX, C. 35.