Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MIGUEL CORTIÑA SERRANO<br><br>Apelado<br><br>v.<br><br>NETSTEP TECHNOLOGIES, INC.; JOSÉ R. MALDONADO GARCÍA; JANE DOE; LA SOCIEDAD DE BIENES GANANCIALES MALDONADO-DOE; ASEGURADORA A; ASEGURADORA B; ASEGURDORA C<br><br>Apelantes | KLAN202400493 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2020CV01721<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 13 de enero de 2025.

Comparece la parte apelante, Netstep Technologies, Inc., y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de abril de 2024, notificada el 18 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la demanda sobre cobro de dinero promovida por la parte apelada, Miguel Cortiña Serrano.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

**I**

El 2 de junio de 2020, Miguel Cortiña Serrano (Cortiña Serrano o apelado) incoó una *Demanda* sobre cobro de dinero en contra de Netstep Technologies, Inc. (Netstep o apelante), José R. Maldonado García (Maldonado García), su esposa Jane Doe y la sociedad legal de bienes gananciales compuesta por ambos, y las

Número Identificador

SEN2025 _____

Aseguradoras A, B y C.[1] En síntesis, Cortiña Serrano alegó que entró en una negociación con Maldonado García en la cual este último estaría recibiendo un dinero de unos proyectos y que se lo entregaría. Adujo, que se realizaron unos depósitos que sumaban ciento cuatro mil dólares ($104,000.00) a Maldonado García y que estos le pertenecían. Arguyó que, a pesar de haber cursado una reclamación extrajudicial el 7 de agosto de 2019, Maldonado García y su compañía Netstep habían sido evasivos en dar información y en realizar el pago de lo adeudado, por lo que solicitó el pago total de ciento cuatro mil dólares ($104,000.00) en concepto de deuda, cinco mil dólares ($5,000.00) en concepto de honorarios de abogados y diez mil dólares ($10,000.00) por temeridad.

En respuesta, el 3 de julio de 2020, Netstep, Maldonado García y Vivian Freytes[2], por sí y en representación de la sociedad legal de bienes gananciales compuesta por ambos, presentaron su *Contestación a Demanda y Reconvención.*[3] En esencia, negaron adeudar cantidad alguna a Cortiña Serrano y levantaron varias defensas afirmativas. Por otro lado, alegaron en su *Reconvención* que, tras el paso del huracán María, Cortiña Serrano hizo un acercamiento a Maldonado García para que lo ayudara a poder reponerse económicamente. Adujeron que Maldonado García permitió que Cortiña Serrano utilizara su compañía, Netstep, para que estuviese solvente y pudiera respaldar el cumplimiento de las labores sobre recogidos de escombros. Entre los acuerdos realizados entre ambos, alegaron que convinieron que Maldonado García se encargaría de todos los trabajos de facturación y cobro, además de cualquier asunto financiero, mientras que Cortiña Serrano estaría

---

[1] Apéndice 1 del recurso, págs. 1-3. Junto a este escrito, la parte apelante presentó el siguiente documento: *Reclamación Extrajudicial*, Véase, Apéndice 1 del recurso, pág.4.
[2] Vivian Freytes compareció como cónyuge de José R. Maldonado García, por sí y en representación de la sociedad legal de bienes gananciales compuesta por ambos.
[3] Apéndice 2 del recurso, págs. 5-11.

encargado de todo lo relacionado con la operación de los trabajos. Arguyeron que Cortiña Serrano consiguió un contrato de remoción de escombros con Xpert's, quien a su vez había sido contratada por la Agencia Federal para el Manejo de Emergencia (FEMA) para el recogido de escombros. Tras un desacuerdo entre ambas partes, adujeron que Cortiña Serrano comenzó a presionar a Maldonado García para que llevara a cabo un cuadre de las operaciones del negocio y se liquidara cualquier dinero adeudado. Luego de no poder llegar a un acuerdo sobre el cuadre de las operaciones del negocio, alegaron que Cortiña Serrano indujo a Maldonado García a establecer una relación contractual bajo representaciones fraudulentas, por lo que solicitaron al foro primario cincuenta mil dólares ($50,000.00) en concepto de daños.

El 7 de julio de 2020, Cortiña Serrano sometió su *Contestación a Reconvención*.[4] En el aludido escrito, Cortiña Serrano negó los hechos alegados.

Así las cosas, el 14 de septiembre de 2021, notificada el día 16 del mismo mes y año, el Tribunal de Primera Instancia emitió una *Sentencia Parcial*.[5] En el referido dictamen, el foro primario desestimó la causa de acción en cuanto a Maldonado García, Jane Doe y la sociedad legal de bienes gananciales compuesta por ambos.

Luego de varios trámites procesales, incluyendo la celebración de varias vistas, el 8 de agosto de 2022, ambas partes presentaron el *Segundo Informe Enmendado de Conferencia con Antelación al Juicio*.[6] En el aludido escrito, estipularon los siguientes hechos:

1. La capacidad de las partes:

   a. El demandante es mayor de edad, divorciado, comerciante, no ha sido declarado incapacitado y con plena facultad para contratar y vecino de Toa Baja, Puerto [Rico]: Urb. Levittown, Calle Ladi X9 4ta Sección, Toa Baja[,] PR 00949.

---

[4] Apéndice 3 del recurso, págs. 12-14.
[5] Entrada Núm. 30 del Caso Núm. BY2020CV01721 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[6] Apéndice 15 del recurso, págs. 84-104.

      b. La parte demandada es una corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con plena faculta[d] para contratar, situada en [la] Urb. Valparaíso, K-50 Calle 3, Toa Baja[,] PR 00949.

2. La parte demandante y el Sr. José R. Maldonado García eran amigos.

3. Que la parte demandada ten[í]a un contrato con Xpert's, Inc.

4. Que el Sr. José [R]. Maldonado Garc[í]a, en representación de NetStep Technologies, Inc., accedió a ayudar al demandante en el proyecto con Xpert's Inc., debido a que el demandante no ten[í]a solvencia económica y que toda [la] facturación se iba a realizar bajo el nombre de NetStep Techonologies, Inc.

5. Que la parte demandante le informaba a la parte demandada, la cantidad a facturar a Xpert's, Inc. y la parte demandada enviaba [las] facturas a Xpert's, Inc. quien[,] a su vez[,] giraba cheques a la parte demandada, quien depositaba los cheques en su cuenta comercial.

6. Que Xpert's, Inc., pag[ó] la suma de $99,609.92 + Christian Military $3,000.00 = $104,418.00, a la parte demandada por el trabajo realizado por la parte demandante.

7. La parte demandante acept[ó] y reconoc[ió] que la parte demandada le entreg[ó] la suma de $16,000.00 en un giro bancario para la compra de una grúa.

8. Que la parte demandante acept[ó] y reconoc[ió] que NetStep Techonolgies, Inc., le entreg[ó] una planta eléctrica, valorizada en $623.24.

9. Que la parte demandante acept[ó] y reconoc[ió] haber recibido de la parte demandada los cheques que se describen a continuación[,] totalizando $24,961.18: 732, 779, 760, 762, 763, 764, 767, 768, 769, 699, 784, 702, 750, 700, 701, 748, 749, 751, 754, 755, 756, 757, 758, 738, 740, 741, 735, 736, 739, 737, 745, 744, 748, 752, 1195, 1196, 1197, 1198, 904, 823, 856, 809, 814, 833, 853, 860, 795, 772, 798, 773, 793, 794, 796, 807 y 907.

10. Que la parte demandante le hizo entrega a la parte demandada de un cheque n[ú]mero 4030 79157649, girado a favor de la parte demandante por el IRS, por la suma de $1,928.42, el cual fue depositado en la cuenta de la parte demandada.

11. Que la parte demandante le hizo entrega a la parte demandada de un cheque n[ú]mero 0241 girado a favor de la parte demandante por IZQ Construction, por la suma de $1,000.00, el cual fue depositado en la cuenta de la parte demandada.

12. Que la parte demandante le hizo entrega a la parte demandada de un cheque n[ú]mero 196 girado a favor de la parte demandante por José M. Izquierdo Henn y Otros, por la suma de $1,500.00, el cual fue depositado en la cuenta de la parte demandada.

13. Cheque número 0241 por la cantidad de $1,000.00 emitido por Izquierdo Construction el día 20 de octubre de 2017 a favor de Miguel Cortiña.

14. Cheque emitido a nombre de Miguel Cortiña por la cantidad de $1,928.42, con su hoja de depósito.

15. Foto de recibo de Sears, para la compra por José R. Maldonado de un microondas para Miguel Cortiña, por la suma de $245.22.

16. Que la parte demandante[,] el día 23 de agosto de 2019, realiz[ó] una reclamación extrajudicial al enviar una carta por conducto de su abogado.

Celebrado el juicio en su fondo y evaluadas las posturas de las partes, el 15 de abril de 2024, notificada el 18 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, mediante la cual declaró Ha Lugar la acción de epígrafe.[7] En particular, el foro primario desglosó las siguientes determinaciones de hechos:

1. El demandante Miguel Cortiña Serrano es mayor de edad, divorciado, comerciante, no ha sido declarado incapacitado y con plena facultad para contratar y vecino de Toa Baja, Puerto [Rico]: Urb. Levittown, Calle Ladi X9 4ta Sección, Toa Baja PR 00949.

2. La parte demandada Netstep Technologies, Inc., es una corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con plena facultad para contratar, situada en [la] Urb. Valparaíso, K-50 Calle 3, Toa Baja[,] PR 00949.

3. La parte demandante Miguel Cortiña Serrano y el Sr. José R. Maldonado García, accionista y dueño de la parte demandada[,] eran amigos.

4. Que la parte demandante consiguió un contrato con Xpert's, Inc., a través de FEMA[,] y tuvo que pedirle al demandado el favor a *[sic]* Sr. José R. Maldonado García para que le prestara su corporación, para poder realizar los trabajo[s][,] ya que el Huracán María inundó la casa del demandante donde tenía guardado[s] los documentos necesarios para obtener el trabajo, y debido a que las agencias gubernamentales estaban cerradas, acudió al Sr. José R. Maldonado García.

---

[7] Apéndice 32 del recurso, págs. 442-450.

5. Que el Sr. José R. Maldonado García, en representación de Net[s]tep Technologies, Inc., accedió a ayudar al demandante en el proyecto con Xpert's[,] Inc., debido a que el demandante no tenía la documentación necesaria y que toda [la] facturación se iba a realizar bajo el nombre de Net[s]tep Technologies, Inc. En términos sencillos, el Sr. Maldonado García, accedió a ayudar al demandante y prestó su compañía, Netstep Technologies, Inc., para ser el ente que representaría al Sr. Cortiña Serrano frente al dueño de la obra, Xpert[']s, Inc. El demandante realizaría el trabajo bajo el nombre de Netstep. Las ganancias del trabajo serían del demandante únicamente. Los gastos administrativos en que incurriera Netstep, serían deducidos de lo que se pagara por Xpert[']s, Inc.

6. Que la parte demandante le informaba a la parte demandada, la cantidad a facturar a Xpert's, Inc. y la parte demandada enviaba facturas a Xpert's, Inc. quien[,] a su vez[,] giraba cheques a favor de la parte demandada, quien depositaba los cheques en su cuenta comercial.

7. Que Xpert's, Inc., pag[ó] la suma de $99,609.92 + Christian Military $3,000.00 = **$102,609.92**, a la parte demandada por el trabajo realizado por la parte demandante.

8. La parte demandante acept[ó], estipuló y reconoc[ió] que la parte demandada le entregó la suma de **$16,000.00** en un giro bancario para la compra de una grúa.

9. Que la parte demandante acept[ó], estipuló y reconoc[ió] que Net[s]tep Technologies, Inc., le entregó una planta eléctrica, valorizada *[sic]* en **$623.24**.

10. Que la parte demandante acept[ó], estipuló y reconoc[ió] haber recibido de la parte demandada los cheques que se describen a continuación totalizando **$24,961.18**: 732, 779, 760, 762, 763, 764, 767, 768, 769, 699, 784, 702, 750, 700, 701, 748, 749, 751, 754, 755, 756, 757, 758, 738, 740, 741, 735, 736, 739, 737, 745, 744, 748, 752, 1195, 1196, 1197, 1198, 904, 823, 856, 809, 814, 833, 853, 860, 795, 772, 798, 773, 793, 794, 796, 807 y 907.

11. Que la parte demandante le hizo entrega a la parte demandada de un cheque número 4030 79157649, girado a favor de la parte demandante por el IRS, por la suma de **$1,928.42**, el cual fue depositado en la cuenta de la parte demandada.

12. Que la parte demandante le hizo entrega a la parte demandada de un cheque número 0241 girado a favor de la parte demandante por IZQ Construction, por la suma de **$1,000.00**, el cual fue depositado en la cuenta de la parte demandada.

13. Que la parte demandante le hizo entrega a la parte demandada de un cheque número 196 girado a favor de la parte demandante por José M. Izquierdo Henn y Otros, por la suma de **$1,500.00**, el cual fue depositado en la cuenta de la parte demandada.

14. El demandante aceptó, estipuló y reconoció un crédito a favor de la parte demandada por la compra de un microondas para Miguel Cortiña, por la suma de **$245.22**.

15. **Que[,] durante el juicio, a base del testimonio del demandante y sin que se objetara por el demandado, se estableció que la deuda reclamada por la parte demandante ascendía a $67,885.24. Quedó así entonces enmendada la demanda por la prueba del demandante**.

16. No obstante, al deducir las sumas que se le acreditan a la parte demandada [,] la deuda es de **$65,208.70**.

17. Además la parte demandada [,] por conducto de su testigo el Sr. José R. Maldonado García, acreditó que se realizaron descuentos por cargos de servicios bancarios, descuentos por la Forma 480.06SP del Departamento de Hacienda, gastos de comida, adelantos cash, gastos administrativos de la corporación demandada como pago de póliza de seguro, CRIM, unas neveras, por total de **$30,000.00**.

18. Total adeudado final al demandante = **$35,208.70**, cuantía líquida, vencida y exigible.

19. La parte demandada no ofreció prueba admisible suficiente en derecho para acreditar las alegaciones de daños y perjuicios levantados contra el demandante. Tampoco present[ó] esta la defensa de compensación en su contestación a demanda.

El foro *a quo* determinó que procedía la demanda instada por Cortiña Serrano y, por tanto, concedió la cuantía de treinta y cinco mil doscientos ocho dólares con setenta centavos ($35,208.70).

En desacuerdo, el 26 de abril de 2024, Cortiña Serrano presentó un *Escrito en Solicitud de Determinaciones Adicionales y/o Reconsideración de Sentencia.*[8] Atendida la solicitud, el mismo día, notificada el 30 de abril de 2024, el foro apelado emitió una *Orden*

---

[8] Apéndice 34 del recurso, págs. 455-457.

mediante la cual declaró No Ha Lugar la moción por académica.[9] En particular, el foro juzgador expresó que:

> [...] YA DETERMIN[Ó], COMO CORRECTAMENTE ALEGA EL DEMANDANTE, QUE NO APLICA EN AUTOS LA FIGURA JUR[Í]DICA DE COMPENSACI[Ó]N POR NO HABERSE LEVANTADO EN TIEMPO COMO DEFENSA AFIRMATIVA POR EL DEMANDADO. EMPERO, DURANTE EL JUICIO, SE EXPRES[Ó] POR EL TRIBUNAL QUE[,] EN EL AN[Á]LISIS DE CALCULAR LA DEUDA, LA CUAL NO SE EXPUSO SIQUIERA EN LA DEMANDA, LA PARTE DEMANDADA POD[Í]A OFRECER PRUEBA, NO ESTANDO EN REBELD[Í]A, PARA IMPUGNAR LA CIFRA DE DINERO ADEUDADA ALEGADA. F[Í]JESE QUE[,] DE LAS MISMAS ESTIPULACIONES DE HECHOS AVALADAS POR EL DEMANDANTE, SE DESPRENDE[N] CUANT[Í]AS QUE EL DEMANDANTE ADMITI[Ó] RECIBI[Ó] DEL DEMANDADO. TAL HECHO, AS[Í] COMO LO DESFILADO EN JUICIO, TIENE QUE TOMARSE EN CONSIDERACI[Ó]N PARA ADVENIR A LA CIFRA TOTAL ADEUDADA, SEG[Ú]N LA PRUEBA DEL CASO.

Inconforme, el 20 de mayo de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente error:

> El Honorable Tribunal de Primera Instancia cometió error de derecho y abusó de su discreción al resolver que durante el juicio el apelante no objetó y[,] por tanto[,] en base al testimonio del demandante se estableció que la deuda reclamada por la parte demandante ascendía a $67,885.24, quedando enmendada la demanda por la prueba del demandante y condenando al apelante al pago de $35,208.70 USD m[á]s las costas y gastos del pleito.

Presentada la transcripción de la prueba oral, el 30 de octubre de 2024, la parte apelante presentó un *Alegato Suplementario.* Por su parte, el apelado compareció mediante *Alegato de la Parte Apelada* el 25 de noviembre de 2024.

Con el beneficio de la comparecencia de las partes, así como con la transcripción de la prueba oral, procedemos a resolver.

## II

### A

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que

---

[9] Apéndice 36 del recurso, págs. 459-460.

sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

**B**

Las alegaciones podrán ser enmendadas en cualquier momento, por la parte reclamante, antes de que se presente una

alegación responsiva, o si es de las alegaciones que no admiten una alegación responsiva y dicho pleito no ha sido señalado para juicio, dentro de los veinte (20) días de haberse notificado la alegación. Regla 13.1 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V., R 13.1. Por otro lado, las partes podrán enmendar sus alegaciones si solicitan permiso al tribunal o si es realizada mediante el consentimiento escrito de la parte contraria. *Íd.*

En nuestro ordenamiento jurídico, se ha reconocido la enmienda de las alegaciones mediante la prueba que se presente en el juicio. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed. rev., San Juan, Ed. LexisNexis, 2017, sec. 2414, pág. 298. En específico, en la Regla 13.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.2, se establece lo siguiente:

> Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aqu[e]llas se considerarán para todos los efectos como si se hubieran suscitado en las alegaciones. La enmienda a las alegaciones que sea necesaria para conformarlas a la evidencia a los efectos de que las alegaciones reflejen las cuestiones suscitadas, podrá hacerse mediante una moción de cualquiera de las partes en cualquier momento, aun después de dictarse sentencia; pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objeta la evidencia en el juicio por el fundamento de ser ajena a las cuestiones suscitadas en las alegaciones, el tribunal podrá permitir las enmiendas, siempre que con ello se facilite la presentación del caso y la parte que presente la enmienda demuestre justa causa por la cual no pudo presentar la enmienda en el momento oportuno del proceso y que la admisión de tal prueba no perjudicará la reclamación o defensa de la otra parte. Al resolver la moción, el tribunal tomará en consideración el efecto de la enmienda sobre el resultado del caso y el perjuicio que le causa a la parte que se opone a la suspensión o continuación de la vista.
>
> [...]

Sobre ese particular, nuestro Tribunal Supremo ha expresado que:

> [...] Si por virtud de las alegaciones una contienda queda trabada entre el demandante y el tercero demandante y durante la vista del caso el demandante presenta prueba contra el tercero demandado y [e]ste

tiene oportunidad de contrainterrogar los testigos y presentar prueba en contrario, las alegaciones deben considerarse enmendadas a los efectos de establecer una reclamación directa del demandante contra el tercero demandado. **La Regla 13.2 autoriza las enmiendas de las alegaciones para conformarlas a la prueba**. [...] *Parilla García v. AFF,* 92 DPR 168, 176 (1965). (Énfasis suplido).

Ahora bien, si se presenta en el juicio evidencia que sostenga hechos que no estaban contenidos en las alegaciones originales, y la parte contraria no las objeta, se entenderá que toda cuestión nueva se está presentando para la consideración y adjudicación del Tribunal, enmendado así las alegaciones. R. Hernández Colón, *op. cit.* Por otro lado, si la parte contraria objeta la prueba presentada por el fundamento de que son contrarias a las alegaciones "...el tribunal podrá entonces permitir que se enmienden, siempre que con ello se facilite la presentación del caso y la parte que presenta la enmienda demuestre justa causa por lo cual no pudo presentar la enmienda con anterioridad, y que la admisión de tal prueba no perjudicaría la reclamación o defensa de la parte contraria". *Íd.*

## C

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no

hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia,

cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

La parte apelante nos plantea que el foro primario incidió al resolver que durante el juicio no objetó y, por tanto, basado en el testimonio de la parte apelada se estableció que la deuda reclamada ascendía a sesenta y siete mil ochocientos ochenta y cinco dólares con veinticuatro centavos ($67,885.24), quedando enmendada la demanda por la prueba del apelado y condenando al apelante al pago de treinta y cinco mil doscientos ocho dólares con setenta centavos ($35,208.70), más las costas y gastos del pleito. No le asiste razón. Nos explicamos.

En nuestro ordenamiento jurídico existe una norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, por lo que en ausencia de pasión, prejuicio, parcialidad o error manifiesto los foros apelativos otorgarán completa deferencia y respeto a las determinaciones realizadas por los foros primarios.[10] Por otra parte, las Reglas de Procedimiento Civil permiten enmendar las alegaciones mediante la

---

[10] Véase, *Sucn. Mena Pamias et al. v. Meléndez et al.*, supra, y *Pueblo v. Hernández Doble*, supra.

presentación de prueba en el juicio cuando sea con el consentimiento expreso o implícito de las partes y se sometan al juicio cuestiones no suscitadas en las alegaciones. Si en el juicio en su fondo se presenta evidencia que sostenga hechos que no estaban esbozados en la acción original, y la parte contraria no objeta oportunamente, dicha cuestión quedará ante la consideración y adjudicación del foro juzgador. Es decir, de esa forma, quedan enmendadas las alegaciones originales; ello, ante la ausencia de objeción de la otra parte.[11]

En el caso ante nuestra consideración, surge de la transcripción de la prueba oral (TPO) que la parte apelada testificó en cuanto a la deuda reclamada. En particular, declaró que esta ascendía a sesenta y siete mil ochocientos ochenta y cinco dólares con veinticuatro centavos ($67,885.24). Sin embargo, no se desprende de la TPO que la parte apelante objetara dicha prueba testimonial. Es decir, ante la falta de objeción oportuna, la parte apelante consintió al total adeudado y, de esa forma, las alegaciones realizadas en cuanto a la suma de la deuda en la demanda original quedaron enmendadas y ante la consideración del foro sentenciador. Aquilatada la prueba ante sí, el foro juzgador le dio entera credibilidad al testimonio de la parte apelada. No surge del expediente ni de la TPO ante nos que la parte apelante probara lo contrario. Por consiguiente, el error señalado no se cometió.

En ausencia de pasión, prejuicio, parcialidad o error manifiesto por parte del Tribunal de Primera Instancia, y debido a que la parte apelante no objetó oportunamente la prueba presentada por la parte apelada en el juicio, damos completa deferencia al foro primario en las determinaciones realizadas.

---

[11] Véase, Regla 13.2 de Procedimiento Civil, *supra, y* R. Hernández Colón, *op. cit.*

## IV

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones